INTERNATIONAL PHILANTHROPIC HOSPITAL FOUNDATION, Plaintiff,

v.

Richard S. SCHWEIKER, Defendant.

No. CV 81–115 MRP.

United States District Court, C.D. California.

July 16, 1982.

censed by the State of California to operate a general acute care hospital known as Granada Hills Community Hospital and is operating that hospital under § 1861(e) of the Medicare Act (42 U.S.C. § 1395x(e)). Plaintiff is a provider of hospital services under Part A of the Medicare Act. These facts are true with respect to all dates relevant to this action.

2. Defendant, Richard S. Schweiker, Secretary of Health and Human Services ("Secretary"), or his predecessor in office, was and now is the federal officer responsible for the administration of the Medicare Act, and was and now is designated the real party in interest in these proceedings. The Secretary is responsible for reimbursing providers, such as plaintiff, for the reasonable cost of covered services rendered to Medicare beneficiaries. Such reimbursement is commonly carried out by fiscal intermediaries pursuant to contract with the Secretary. 42 U.S.C. § 1395h.

3. Blue Cross Association is an Illinois corporation which, through regional Blue Cross plans, acts as a fiscal intermediary in the administration of the Medicare Act pursuant to contract with the Secretary. During all dates relevant herein, Blue Cross Association, through Blue Cross of Southern California ("Blue Cross"), acted as the fiscal intermediary in making payments to plaintiff under Part A of the Medicare Act.

4. At all times relevant to this action, plaintiff had an agreement with the Secretary to provide hospital services as a "provider of services" under Section 1866 of the Medicare Act. 42 U.S.C. § 1395cc.

5. As plaintiff's fiscal intermediary under the Medicare Act, Blue Cross assumed the responsibility of determining the payments to be received by the hospital for the rendering of hospital services under the Medicare Act. Blue Cross makes interim, estimated payments at least monthly with subsequent adjustments for overpayments and underpayments. At the close of a fiscal year, the hospital files a "cost report" as provided in 42 C.F.R. § 405.406(b)(1). After receipt of the cost report, Blue Cross is

Patric Hooper, Weissburg & Aronson, Inc., Los Angeles, Cal., for plaintiff.

Carolyn M. Reynolds, Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PFAELZER, District Judge.

### FINDINGS OF FACT

1. Plaintiff, International Philanthropic Hospital Foundation, is a non-profit corporation organized and existing under the laws of the State of California. It is li-

required to analyze the report, undertake any necessary audits, and inform the hospital of the final determination of the amount of its Medicare reimbursement.

6. The hospital is entitled to be reimbursed under Part A of the Medicare Act as a provider of hospital services for the reasonable costs incurred in providing such care to eligible beneficiaries. The term "reasonable cost" is defined in the Medicare Act as the "cost actually incurred, excluding therefrom any part of incurred costs found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies and services . . . ." 42 U.S.C. § 1395x(v)(1)(A).

In addition to providing that hospitals be reimbursed the reasonable cost of providing services to Medicare beneficiaries as determined in accordance with regulations, the statute states that, "[T]he necessary costs of efficiently delivering covered services to individuals covered by the insurance programs . . . will not be borne by individuals not so covered . . . ." Id.

7. Pursuant to this statutory authority, the Secretary has promulgated regulations which prescribe the method for allocating costs to the Medicare program. The amount of Medicare reimbursement for services provided by a hospital is calculated by "apportioning" the total cost between Medicare and non-Medicare patients. 42 C.F.R. § 405.452(b). This procedure requires the computation of the cost of "routine services." "Routine services" include "the regular room, dietary, and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made." 42 C.F.R. § 405.-452(d)(2). With respect to general routine services, first the "average cost per diem" of providing those services to all patients is arrived at by dividing the total number of inpatient days into the total cost of providing the routine services. 42 C.F.R. § 405.-452(d)(7). The apportionment is accomplished by multiplying the average cost per diem by the number of days of care rendered to Medicare beneficiaries.

8. Since the inception of the program, Medicare regulations provided for the computation of the average per diem cost of routine services. 42 C.F.R. § 405.452(d)(2) and (7). Pursuant to Medicare reimbursement principles, hospitals were required to count, as an inpatient day, a day on which patients were receiving services in ancillary areas of the hospital at the census-taking hour. The costs of ancillary services furnished in the ancillary areas were accumulated in those areas and were apportioned using a method which does not rely on the concept of per diem costs. 42 C.F.R. § 405.452(b)(1). The costs of ancillary services furnished in the labor/delivery area were reimbursable by Medicare in the same manner as other ancillary service costs. Id.

9. Cost report form SSA 2570 was issued in November 1972. The instructions on that form were unclear as to the inclusion or exclusion of labor/delivery days in the total inpatient count for the purpose of computing the average per diem cost of routine care services. This ambiguity was interpreted by the fiscal intermediary, Blue Cross Association, as requiring the exclusion of patient days in the labor/delivery area.

10. By 1974, officials at the Medicare Bureau were aware of the confusion concerning the exclusion or inclusion of patient days in the labor/delivery area in the total number of inpatient days for the purpose of computing the average per diem cost of routine care services. In December 1974, officials at the Medicare Bureau commenced a study of the problem. A clarification of Medicare policy was first issued in July 1975. HIM–15 section 2345 was issued in 1976 as an interpretation and clarification of Medicare policy on the treatment of patient days in the labor/delivery area. It explicitly required that the statistics relating to a hospital's labor/delivery room area be included in general routine patient days.

11. A hospital maintains a labor/delivery room where an expectant mother is taken upon her arrival at the hospital. If delivery is probable, the expectant mother remains in the labor/delivery room area until after delivery. An expectant mother may remain in the labor/delivery room area from four to twenty-four hours if she is in labor for the first time. If the mother has previously been in labor, she may remain in the labor/delivery room area for a period ranging from two to eight hours. Thus, the majority of patients in the labor/delivery area at the census-taking hour will be transferred to routine care and will be receiving routine services before the next census-taking hour. The costs of services and supplies provided to the patient in the labor/delivery room are allocated to the labor/delivery ancillary cost center.

12. The Medicare intermediary made adjustments to plaintiff's 1977 and 1978 cost reports to include patient days in the labor/delivery area in the computation of the average cost per diem for general routine services. Plaintiff's cost report had excluded these patient days from the calculation of average cost for general routine services. The intermediary's adjustment resulted in less reimbursement for the hospital than it had claimed.

13. Plaintiff pursued a timely appeal of the intermediary's adjustments at the Provider Reimbursement Review Board where a hearing on the record was held. On September 16 and September 30, 1980, the Board issued its decisions regarding the 1977 and 1978 cost reports. It ruled that labor/delivery room patient day statistics should be excluded from total general routine patient days for the purposes of computing the average cost per diem for general routine services.

14. The Secretary, through the Administrator of the Health Care Financing Administration, subsequently reviewed the Board's decisions. On November 18 and November 28, 1980, he issued his decisions which reversed the Board and affirmed the intermediary's determinations.

15. HIM–15 § 2345 was not enacted pursuant to the rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. § 553.

16. To the extent that any Conclusions of Law are deemed to be Findings of Fact, they are incorporated into these Findings of Fact.

CONCLUSIONS OF LAW

1. To the extent that any Findings of Fact are deemed to be Conclusions of Law, they are incorporated into these Conclusions of Law.

2. This action arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395 *et seq.*

3. Jurisdiction exists under 42 U.S.C. § 1395*oo* (f). Venue lies in this judicial district pursuant to 42 U.S.C. § 1395*oo* (f).

4. Plaintiff has exhausted all administrative remedies provided to it for challenging the Administrator's decisions. The Administrator's decisions constitute final agency action under 5 U.S.C. § 701 *et seq.*

5. The scope of this Court's review of those decisions is governed by the Administrative Procedure Act, 5 U.S.C. § 706, which requires the Court to set aside the agency's decisions only if they are inconsistent with the governing statute, arbitrary or capricious, without observance of the procedure required by law, or otherwise not in accordance with the law.

6. The Administrator's decisions are reasonable and consistent with the statute. His interpretation of the regulations challenged herein is reasonably within the scope of the Secretary's authority under 42 U.S.C. § 1395x(v) and his decision is supported by substantial evidence.

7. It is not feasible for Medicare to determine the actual cost of the unique services rendered to each beneficiary. Therefore, the Secretary has developed methods of determining costs which are based on averages. While the method of counting routine patient days for patients located in ancillary areas at the census-taking hour is

not precise, it does ultimately result in a reasonable matching of costs and statistics.

8. Patients in the labor/delivery area at the census-taking hour are as likely to occupy a general routine care area thereafter as are patients in other ancillary areas. Thus, the Secretary's similar treatment of all ancillary areas is neither arbitrary nor capricious.

9. The methodology for counting patient days challenged by plaintiff is consistent with the charging and payment practices of third-party payers and many hospitals. 42 C.F.R. § 405.406(a).

10. 42 C.F.R. § 405.452(d)(2) and (7), when considered in conjunction with 42 C.F.R. §§ 405.430(b)(3) and (b)(5) and 405.-452(d)(10), can easily be understood as requiring inclusion of labor/delivery days in the inpatient day count for purposes of computing the average per diem cost of routine services. Section 2345 of the Provider Reimbursement Manual is interpretive of these regulations. It was issued to clarify the confusion that had arisen over ambiguous instructions on the prior cost reporting form. Section 2345 does not represent a change in prior regulations or policy. Because the section is interpretive of existing regulations and existing policy, it was not required to be published pursuant to the Administrative Procedure Act.

11. Therefore, defendant's motion for summary judgment must be granted and plaintiff's motion for summary judgment must be denied. The Administrator's decision to include patient days in the labor delivery room in the computation of average per diem cost of routine services was neither arbitrary nor capricious.