**BETH ISRAEL HOSPITAL, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

**Civ. A. No. 82–102–C.**

United States District Court,
D. Massachusetts.

Sept. 28, 1983.

Jeffrey L. Heidt, Choate, Hall & Stewart, Boston, Mass., for plaintiff.

Patti Saris, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought pursuant to 42 U.S.C. § 1395$oo$(f) to review a final decision of the Secretary of the United States Department of Health and Human Services ("HHS"). The Secretary reversed a decision by the Provider Reimbursement Review Board (the "PRRB") which refused to follow guidelines promulgated by the Secretary to compute plaintiff Beth Israel Hospital's (the "Hospital's") costs of providing services to Medicare beneficiaries in fiscal years 1977 and 1978. For the reasons stated below, I uphold the decision of the Secretary.

The Hospital is an approved provider of hospital services under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Program"). The Medicare Program requires that providers of hospital services "apportion" their operating costs between their Medicare patients and their non-Medicare patients. This appeal involves the method the Hospital used to apportion its costs.

## STATUTORY AND PROCEDURAL BACKGROUND

Medicare regulations prescribe a complex method to apportion the cost of routine hospital services between Medicare and non-Medicare patients. The regulations define "routine services" to include "the regular room, dietary, and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made." 42 C.F.R. § 405.452(d)(2). The Secretary reimburses providers for hospital services provided to Medicare patients according to the following two-step formula:

(1) $$\frac{\text{Total cost of routine services to all patients}}{\text{Total number of inpatient days, including non-medicare inpatient days}} = \begin{array}{l}\text{Average cost} \\ \text{of routine} \\ \text{inpatient services} \\ \text{per diem}\end{array}$$

(2) $$\begin{array}{l}\text{Average cost} \\ \text{of routine} \\ \text{services per} \\ \text{diem}\end{array} \times \begin{array}{l}\text{Number of} \\ \text{Medicare} \\ \text{inpatient} \\ \text{days}\end{array} = \text{Amount reimbursed}$$

An inpatient day denotes one day of care to a patient. If the Hospital cares for two patients in one day, it counts two inpatient days. The Hospital is required to count the number of inpatient days by a census at midnight of each day. A routine inpatient present in a general routine care area at midnight is considered an inpatient for Medicare reporting purposes for the following 24 hours. Section 216, Hospital Manual, HIM–10. If a routine inpatient is receiving "ancillary services," defined as "services for which charges are customarily made in addition to routine services," 42 C.F.R. § 405.-452(d)(5), at the midnight census hour, he or she is nonetheless counted as a routine inpatient in the census.

The dispute here involves the Hospital's computation of its average cost of routine inpatient services per diem. In 1976, the Health Care Financing Administration ("HCFA"), a division of HHS, promulgated the Provider Reimbursement Manual ("PRM"). PRM, Part I, § 2345 requires that "[i]f a patient is in the labor/delivery room at the census-taking hour, an inpatient day will be counted in the routine maternity care area ..." for the purpose of apportioning general routine service costs between Medicare and other patients.

The Hospital refused to include labor/delivery room inpatient days in the count of total routine inpatient days in its financial report to Blue Cross of Massachusetts, Inc., ("Blue Cross"), its financial "intermediary" to the Medicare program. When Blue Cross adjusted the report to include labor/delivery room days, the Hospital appealed to the PRRB, an impartial hearings panel established under the Medicare program to resolve provider reimbursement disputes. 42 U.S.C. § 1395$oo$(a). The PRRB ruled that labor/delivery room days need not be included in the Hospital's number of routine inpatient days. It reasoned that because providers do not incur any routine care costs for patients occupying

the labor/delivery room, it is "inconsistent" to include those patients in the count of routine inpatients. PRRB Decision at 7.

Blue Cross appealed to the Deputy Administrator of the HCFA, pursuant to 42 U.S.C. § 1395oo(f), which reversed the PRRB decision, constituting the final decision of the Secretary. The Hospital filed a timely appeal to this Court under 42 U.S.C. § 1395oo(f). The case is now before this Court on cross motions for summary judgment.

## DISCUSSION

The Hospital argues that the Secretary should not include labor/delivery room patients in the number of routine inpatients because they receive no routine services while in the labor/delivery room areas. The Hospital offers the following example: Assume the Hospital incurred, in one reporting period, $1,000,000 in general routine services costs, that it counted 9,000 inpatient days of routine care during the reporting period of which 5,000 were Medicare inpatient days, and that, in addition, the Hospital counted 1,000 patient days in the labor/delivery room areas. Under the Secretary's calculation, which includes labor/delivery room patient days in the number of total inpatient days, reimbursement would be calculated as follows:

$$\frac{\$1{,}000{,}000 \text{ cost of routine services}}{10{,}000 \text{ total inpatient days}} \quad X \quad 5{,}000 \text{ Medicare inpatient days} \quad = \quad \$500{,}000 \text{ Medicare reimbursement of Hospital}$$

If the Hospital were to exclude labor/delivery room days from the number of inpatient days, the formula would yield:

$$\frac{\$1{,}000{,}000 \text{ cost of routine services}}{9{,}000 \text{ total inpatient days}} \quad X \quad 5{,}000 \text{ Medicare inpatient days} \quad = \quad \$555{,}555 \text{ reimbursement of Hospital}$$

By the Secretary's calculation, then, Medicare pays a smaller percentage of the Hospital's general routine care costs, and the Hospital is forced to shift more of those costs to non-Medicare patients. The Hospital contends that the Secretary's calculation thus violates 42 U.S.C. § 1395x(v)(1)(A), which requires that the Secretary promulgate regulations such that

the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by [Medicare] ... *Id.*

The Hospital also contends that the Secretary's decision ordering application of the formula in this case was not supported by substantial evidence, was arbitrary, capricious and an abuse of discretion, and that it constituted a deprivation of the Hospital's property without due process of law.

■ This Court may reverse the Secretary's decision only if it is arbitrary, capricious, an abuse of discretion, or not in accordance with law. 5 U.S.C. § 706(2)(A). The interpretation of a statute by the agency charged with administering the statute must be given considerable respect. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). And an "agency's construction of its own regulations has been regarded as especially due that respect." *Id.*

The Deputy Administrator recognized that the labor/delivery room patient may not receive routine services until she actually leaves the delivery room. Decision of the

Administrator at 9. He reasoned, however, that because routine services are available to the patient when she leaves the labor/delivery room and enters a routine care area, the labor/delivery room patient should be counted as an inpatient "no matter where that patient happens to be at the census-taking hour." *Id.*

■ I rule that the Secretary's formula is not arbitrary or capricious. Although labor/delivery room patients do not receive routine services while in the labor/delivery area, the record indicates that a number of them will likely receive routine services at some point within 24 hours of their admission to the labor/delivery area. The Hospital has stipulated that

[t]he average length of stay in the labor/delivery area of patients who are admitted to that area is 12.6 hours. After the recovery period, when the patient's condition is stable, she is moved to a bed on a routine patient care floor of the hospital. Stipulation of Parties # 53, A.R. 508.

A large number of women, then, in the labor/delivery area at midnight will likely be placed in a routine care area at some time before noon of the next day and even more will be placed in the unit as the day wears on. The Secretary's formula reflects the likelihood that those women will receive routine services sometime within the next 24 hours.

The Hospital counters stating that a "substantial" number of patients in the labor/delivery area will never receive routine services. It contends that as many as 30–40% of labor/delivery area patients will be diagnosed as having false labor and will be discharged from the labor/delivery area without ever receiving routine services.* Other patients (the Hospital offers no number) will simply be treated for pre-eclampsia and will be discharged and released without receiving routine services. Even if these facts are as the Hospital contends, the Secretary's calculation is no less reasonable. By the Hospital's own figures, about half and likely more of the patients in the labor/delivery area at midnight will receive routine services during the next 24 hours.

The statute does not require the Secretary to determine the precise number of women receiving routine care on any given day. Nor do I. The Hospital's failure to provide such exact numbers even for this appeal highlights how difficult such a census can be. Because of this difficulty, and because many, if not most, patients in the labor/delivery area will receive some routine services during the 24 hours following the midnight census, I rule that the Secretary's practice of including the entire group of labor/delivery area patients among routine patients to calculate the "reasonable cost" of providing those services under 42 U.S.C. § 1395x(v)(1)(A) is not arbitrary, capricious, or contrary to law. *Accord, Univ. of Tenn. v. U.S. Dept. of Health and Human Services,* 573 F.Supp. 795, 796 (E. D.Tenn.1983); *International Philanthropic Hospital Foundation v. Schweiker,* 568 F.Supp. 781 at 784–5 (C.D.Cal.1983); *Saint Mary of Nazareth Hospital Center v. Schweiker,* No. 80–3280 (D.D.C.1981), slip op. at 3.

■ Next, the Hospital contends that the Secretary acted arbitrarily and capriciously in classifying its labor/delivery area as an ancillary care unit and not as an intensive

* Plaintiff cites to page 638 of the administrative record to support its 30–40% false labor figure. Page 638 records the testimony of a Rosemary Dale, Administrator of Nursing at the Medical Center Hospital of Vermont, before the PRRB in an American Hospital Association appeal of this same issue. Ms. Dale referred not to Beth Israel Hospital's false labor rate, but to that of the Fordham Hospital where she had worked. She testified in addition that the percentage of false labor patients at other hospitals can be as low as 7–10%. A.R. 637. The Hospital has not called the Court's attention to any specific figures relating to its own false labor rate. It notes merely that the number can be "as many as 30–40%." Hospital's Memorandum in Support of its Cross Motion for Summary Judgment at 27. For the purposes of this decision, I accept this number as a maximum.

care unit. Patients in ancillary care areas are considered routine inpatients; patients in intensive care units are not. Thus, if the labor/delivery area were classified as an intensive care unit, patients there would not be considered routine inpatients for purposes of the reimbursement formula.

During 1977–78, the years here at issue, 42 C.F.R. § 405.452(d)(10) provided:

> To be considered an intensive care unit, coronary care unit, or other special care inpatient hospital unit, the unit must be in a hospital, must be one in which the care required is extraordinary and on a concentrated and continuous basis and must be physically identifiable as separate from general patient care areas . . . includ[ing], but . . . not limited to burn, coronary care, pulmonary care, trauma, and intensive care units but exclud[ing] postoperative recovery rooms, postanesthesia recovery rooms, *or maternity labor rooms.* (Emphasis added)

The Hospital contends that its labor/delivery area satisfies all the definition's general criteria to qualify as an intensive care unit, and that to except it from that status merely because it is a maternity room is arbitrary and capricious.

The decision whether to classify a hospital ward as an ancillary care ward or as an intensive care ward is made for accounting purposes. The Court of Appeals for the Ninth Circuit recently upheld a similar decision by the Secretary stating,

> If ever there were a case in which a court should defer to an agency's interpretation of its regulation, this is the case. The regulation, promulgated by the agency, involves the method of accounting used in distributing Medicare payments. The application of this regulation certainly involves a substantive area in which the agency has much more expertise than any court. *White Memorial Medical Center v. Schweiker,* 640 F.2d 1126, 1129 (9th Cir. 1981).

This Court cannot say that the Secretary's classification of the Hospital's maternity ward, or of maternity wards in general, as ancillary care areas is arbitrary or capricious. For example, it would be reasonable for the Secretary to presume that postanesthesia, postoperative, and maternity care is short-term, and that patients receiving such care should be considered routine patients receiving temporary ancillary care. Likewise, it would be reasonable for the Secretary to presume that patients in a hospital's burn, coronary care, pulmonary care, and trauma units require more extensive, long-term care. In the absence of a greater showing by the Hospital, I rule that the Secretary's classification of the Hospital's maternity ward as an ancillary care area is not arbitrary or capricious.

■ Finally, because I rule that the Secretary's method of calculation is lawful under the Medicare statutes and regulations, and is not arbitrary, capricious, or an abuse of discretion, I also rule that the Secretary's use of the formula did not constitute a deprivation of the Hospital's property without due process of law.

Accordingly, I rule that the Secretary's decision to include patients in the Hospital's labor/delivery area among its routine patients is not arbitrary, capricious, or in violation of statute, and therefore should be affirmed.

Order accordingly.