**MILFORD MEMORIAL HOSPITAL, INC.**

v.

**The UNITED STATES.**

No. 587–80C.

United States Court of Claims.

March 10, 1982.

Randy J. Holland, Georgetown, Del., atty. of record, for plaintiff; Morris, Nichols, Arsht & Tunnell, Georgetown, Del., of counsel.

Judith E. Cohn, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant; James S. Feight, Jr., Dept. of Health & Human Services, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and NICHOLS, Judge.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

Plaintiff owns and operates a hospital and is a nonprofit "provider of services" under the Social Security Act, Title XVIII, 42 U.S.C. § 1395cc. It is reimbursed for costs incurred by it in providing care to Medicare beneficiaries. For the cost year ended June 30, 1974, the intermediary disallowed otherwise allowable reimbursement for the portion of emergency room costs allocable to Medicare in the amount of $6,269.00, which the intermediary held to be offset by two "restricted grants." They were payments to the hospital by local county government bodies to assure the continued operation of the emergency facility. The issue we are to decide is whether the facts found support the legal conclusion that the grants were restricted in the sense of a pertinent regulation and the "Providers Manual." We hold that they were not and therefore plaintiff is entitled to recover.

The case is before us on cross-motions for summary judgment which are properly documented briefs, and oral argument. Plaintiff has exhausted its remedies and we have the benefit of careful fact findings by the hearing officer employed for that purpose by the intermediary, Blue Cross Association. The review officer designated by the Secretary of Health and Human Services made no new findings, but adopted the intermediary's as his own.

Defendant's first point in support of its motion is, if any review by us of a Medicare reimbursement decision is permissible, it is only to correct unconstitutional procedures or violations of the governing statute. *Goldstein v. United States*, 201 Ct.Cl. 888, 889, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973). Plaintiff says this court also reviews to determine whether the findings of the Secretary were arbitrary, capricious, or not supported by substantial evidence. *Overlook Nursing Home, Inc. v.*

*United States*, 214 Ct.Cl. 60, 556 F.2d 500 (1977). The issue here is the proper interpretation of a regulation, as will appear. In determining the scope of review, a misinterpretation of a regulation having the force of law cannot be distinguished from misinterpretation of a statute. *Overlook, supra.* The difference between the positions of the parties concerning facts does not relate to a germane issue. We do not decide whether the Secretary's decision was arbitrary, capricious, or contrary to substantial evidence.

The regulation reads as follows:

§ 405.423 Grants, gifts, and income from endowments.

(a) *Principle.* Unrestricted grants, gifts, and income from endowments should not be deducted from operating costs in · computing reimbursable cost. Grants, gifts, or endowment income designated by a donor for paying specific operating costs should be deducted from the particular operating cost or group of costs.

(b) *Definitions—(1)* *Unrestricted grants, gifts, income from endowment.* Unrestricted grants, gifts, and income from endowments are funds, cash or otherwise, given to a provider₁ without restriction by the donor as to their use.

(2) *Designated or restricted grants, gifts, and income from endowments.* Designated or restricted grants, gifts, and income from endowments are funds, cash or otherwise, which must be used only for the specific purpose designated by the donor. This does not refer to unrestricted.grants, gifts, or income from endowments which have been restricted for a specific purpose by the provider.

(c) *Application.* (1) Unrestricted funds, cash or otherwise, are generally the property of the provider to be used in any manner its management deems appropriate and should not be deducted from operating costs. It would be inequitable to require providers to use the unrestricted funds to reduce the payments for care. The use of these funds is generally a means of recovering costs which are not otherwise recoverable.

(2) Donor-restricted funds which are designated for paying certain hospital operating expenses should apply and serve to reduce these costs or group of costs and benefit all patients who use services covered by the donation. If such costs are not reduced, the provider would secure reimbursement for the same expense twice; it would be reimbursed through the donor-restricted contributions as well as from patients and third-party payers including the title XVIII health insurance program.

The Provider Reimbursement Manual Sections 604 and 606 throw clear light on the intent and purpose of this regulation and are as follows:

604. UNRESTRICTED GRANTS, GIFTS, AND INCOME FROM ENDOWMENTS—GENERAL RULE. Unrestricted contributions are not deducted from costs in computing allowable costs. These funds are considered the property of the provider to be used as it deems appropriate. These funds generally give the provider a means of recovering costs which are not otherwise recoverable, such as costs related to bad debts of patients not covered under Medicare.

606. RESTRICTED GRANTS, GIFTS, AND INCOME FROM ENDOWMENTS—GENERAL RULE. Restricted contributions which are designated by the donor for paying certain provider operating costs, or groups of costs, or costs of specific groups of patients, are to be deducted from the designated costs or group of costs. Where the cost or group(s) of costs designated covers services rendered to all patients, including Medicare beneficiaries, operating costs applicable to all patients are reduced by the amount of the restricted grants, gifts, or income from endowments thus resulting in a reduction of allowable costs. For example, if a specific donation were made to cover the costs of medical social services for all patients, the costs of medical social services would be reduced by the amount of the donation to arrive at allowable costs.

Plaintiff relied on a letter by the County Executive dated August 8, 1975, and stating that the purpose of the "Levy Court" was to assist the hospital in meeting losses on uncollected charges for emergency department treatment. The intermediary rejected this or rather gave it "little evidentiary weight since it was issued subsequent to the time in which the appropriation was given." We do not challenge this conclusion for purposes of our review as it deals with the kind of fact issue from which we generally refrain. He drew the further conclusion that the burden of proof to substantiate its allegation was placed on a provider by Regulation 405.453 and since no other substantiation was provided, the allegation must be disbelieved. He referred to certain other more contemporaneous official statements to the effect that the grants were needed to help the hospitals meet the losses sustained in their emergency departments, to encourage them to maintain such facilities, much needed by the public, or to assist them to maintain their departments.

Both the intermediary and the review officer ignored the distinction between undesignated and designated grants as drawn in the regulation. The difference is, to put it simply, the difference between the granted funds being available for any purpose of the grantee and funds available only for a restricted purpose. A mere motive to assure continued operation of the emergency department as a *quid pro quo* is not the same as actual restrictions on the use of the money, making it unavailable for other general purposes. There was nothing in the grants providing that they "must be used only for the specific purpose designated by the donor" which is how the regulation defines a restricted grant. The statements here give no indication that the money was earmarked in any way, or even that the hospitals were required to expend any specific amount of the granted funds or their own funds on the emergency facilities. The emergency rooms must remain open, as the required *quid pro quo.* If they did not, the grants would cease.

The record does not reflect how, for cost accounting purposes, the cost of furnishing emergency care was stated separately from other costs of the hospital, or whether any segregated funds were in fact maintained. We may take notice that the cost of keeping the emergency department in place would necessarily include some direct costs incurred to operate other departments of the hospital such as use of doctors and nurses, to say nothing of indirect costs. A complete earmarking of money for an emergency department would seem to have been a feat of whose performance there is no hint in this record, though of course a qualified accountant could and doubtless did prepare acceptable estimates as to how much of the general costs of the hospital were properly allocable to emergency care. His estimates would be estimates only, comparable to estimates in industry of the cost of producing various individual products in a single plant.

The intermediary and the reviewer had, therefore, not only no substantial evidence, but not any evidence that the grants were earmarked for employment in a segregated fund only, not the general property of the hospital, and in determining as they did, they asked the wrong questions and misapplied the regulation.

Both the intermediary and the reviewer rely, in effect, on a kind of presumption that any grant made for a particular motive is a grant restricted for that purpose, and that the burden is on the grantee to prove the contrary. As authority for imposition of this unnatural burden they rely on 42 C.F.R. § 405.453. This states at its beginning—

§ 405.453 Adequate cost data and cost finding.

(a) *Principle.* Providers receiving payment on the basis of reimbursable cost must provide adequate cost data. * * *

There follows an elaborate discourse no doubt most helpful to hospital accountants. There is nothing specific about restricted or unrestricted grants, and the regulation is taken wholly out of context in using it to create the unnatural presumption made use of here. We think a more natural presump-

tion would be that notwithstanding the motive, a grant is unrestricted unless the contrary is stated.

If the donor did not contemporaneously say in any form of words whether the grant was restricted or not, it would be impossible for the provider to satisfy § 405.453 as misconstrued by the intermediary, and he must lose. By our view, such silence would presumptively establish the grant was unrestricted and a heavy burden would rest on anyone contending otherwise.

In requesting reconsideration of the decision by the Secretary's reviewing officer, plaintiff submitted minutes of the Kent County Levy Court's meeting of March 20, 1979. The Levy Court apparently corrected minutes of a September 21, 1976, meeting. The corrected minutes reiterate the proposition that the grants were to "reduce uncollected amounts of the emergency room department for services provided to Kent County residents." The officer declined to reconsider, reiterating the position that great weight would only be given to evidence either contemporaneous or prior to the time of the grants by the county government.

All parties doggedly labored the absurd semantic issue whether the grants were to reduce losses sustained by the emergency departments or losses due to uncollected charges to Kent County residents for emergency department services. The latter case is given in the manual as an example of an unrestricted grant, not as comprising that entire category. We have shown that the intermediary was asking the wrong question, the right one being whether the hospitals were full owners of the granted money, without restriction as to use, after the county government paid it over. The hospital clearly did correctly say at all times that it was the unrestricted owner of the money, even though the grounds it said it relied on for saying so were not factually established. We do not think this is a case of a novel contention not made at the administrative stage of decision.

Accordingly, defendant's motion for summary judgment is denied, plaintiff's motion

for summary judgment is granted, and judgment is entered for plaintiff in the amount of $6,269.