**McKEESPORT HOSPITAL, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, and Carolyne K. Davis, Ph.D., Administrator, Health Care Financing Administration, Department of Health and Human Services, Defendants.**

**GREENE COUNTY MEMORIAL HOSPITAL, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. Nos. 82–897, 82–1609.**

United States District Court, W.D. Pennsylvania.

June 26, 1985.

Jack Mumford, Duane Morris & Hecksher, Harrisburg, Pa., Seymour Schafer, Markel Schafer Means, Pittsburgh, Pa., for plaintiff in Civ. A. No. 82–897.

J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for defendant in both cases.

Diane Moskal, Asst. Regional Counsel, Philadelphia, Pa., for defendant in Civ. A. No. 82–897.

## INTRODUCTION

GERALD J. WEBER, District Judge.

These cases grew out of the Secretary's denial of Medicare reimbursement to many hospitals around the country for certain expenses. In the interim between the time plaintiffs filed these cases and the present, the primary issue has been aired before four circuits of the Court of Appeals, various district courts, and review boards. During this time, both parties have worked diligently to keep the court abreast of the latest developments by submitting voluminous briefs and updates. Thus prepared to consider the matter, we will address the parties' cross-motions for summary judgment. There is no dispute over relevant facts.

In these cases we face two types of claims for reimbursement. The first involves both plaintiffs and focuses on the Secretary's revised consideration of the expenses attributed to mothers about to give birth, the labor/delivery patients. The second issue applies only to Greene Hospital and concerns the Secretary's refusal to reimburse certain expenses of Greene's employee sick leave program.

## I. THE LABOR/DELIVERY ISSUE.

### A. *Regulatory Background.*

The Medicare program subsidizes the medical care of elderly and disabled citizens. Medicare beneficiaries obtain treatment from health care providers, primarily hospitals, which participate in the program by choice. The Government typically reimburses these providers through "fiscal intermediaries" such as Blue Cross. The fiscal intermediaries function under contract with the Department of Health and Human Services ("HHS"). 42 U.S.C. § 1395.[1]

As one might expect of a national program with a budget in the tens of billions, Medicare reimbursement is controlled by a complex system of regulations. In reimbursing health care providers, the Secretary generally pays the reasonable cost of services rendered to Medicare patients. Section 1395f(b)(1). Reasonable cost is defined as "the cost actually incurred excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services and shall be determined in accordance with regulations establishing the method or methods to be used." Section 1395x(v)(1)(A). In further breaking down reasonable cost, the regulations distinguish the respective costs of "routine services" and "ancillary services." Routine services are those for which no additional charge above the customary fee is made and which every inpatient uses; room, food, and nursing care, for example. 42 C.F.R. § 405.452(d)(2). Ancillary services are those involving discrete added costs which are specific to each patient, such as blood tests, x-rays, and CAT scans. 42 C.F.R. § 405.452(d)(3). The Secretary follows a two-step formula in reimbursing reasonable costs which perhaps is best understood when expressed mathematically.

1. $\dfrac{\text{Total cost of routine services}}{\text{Total number of inpatient days}} = \dfrac{\text{average cost}}{\text{per diem}}$

2. (Average cost per diem) × (number of Medicare beneficiary inpatient days) = amount reimbursed.

*See Saint Mary of Nazareth Hospital Center v. Schweiker*, 718 F.2d 459, 462 n. 7 (D.C.Cir.1983).

### B. *Factual Background.*

Labor/delivery services are considered to be ancillary, not routine; that is, such services are not customarily rendered to each

---

1. All citations to statutes refer to Title 42 of the United States Code unless otherwise stated.

inpatient. Plaintiffs thus never included labor/delivery patients in their calculations when they sought Medicare reimbursement for routine services. For accounting periods beginning on or after September 1, 1976, however, the Secretary revised the applicable reimbursement formula through section 2345 of the Provider Reimbursement Manual. The new formula required that patients in ancillary areas at the census-taking hour [2] be counted in the routine inpatient population when calculating average costs per diem for routine inpatient care. Reimbursement for ancillary costs, however, continued to be made separately.

The hospitals felt that including labor/delivery patients in the reimbursement formula without including attendant costs unfairly diluted their Medicare reimbursement. See p. 280 infra, denominator of part 1. They argue simply that women in labor/delivery areas of the hospital are not generating routine costs; they are receiving the specialized care accorded delivering mothers for which a separate charge is made. They also contend that extremely few Medicare beneficiaries—the rare exception of an elderly or disabled woman—require labor/delivery care.

### 1. *Administrative History.*

Faced with what they considered an inequitable Medicare requirement, both plaintiffs took the same course of action. Contrary to section 2345 of the Provider Reimbursement Manual, they excluded labor/delivery patients from the inpatient count for calculating routine services. Their fiscal intermediary, the Blue Cross Association of Western Pennsylvania, chose to follow section 2345 and modified plaintiffs' reimbursement request by including labor/delivery patients in the tally. The hospitals appealed this decision to the Provider Reimbursement Review Board ("PRRB").[3] After an extensive hearing the PRRB reversed Blue Cross and allowed

the hospitals to exclude labor/delivery patients in calculating reimbursement for routine services. The Deputy Administrator for the Health Care Financing Administration reversed the PRRB's decisions for the plaintiffs; both hospitals were required to include labor/delivery patients in calculating reimbursement for routine services.[4] McKeesport Hospital was denied $26,000 reimbursement for the years 1978–79. Greene Hospital was denied $8,800 for 1978 and $12,670 for 1979.

The Deputy Administrator reversed an additional claim for reimbursement which affects only Greene Hospital. Under its collective bargaining agreement, Greene was obligated to pay its employees for sick leave that these employees had accrued but not taken. This claim followed the same path as the labor/delivery issue in ascending through the administrative appeals process: the fiscal intermediary rejected Greene's claim and the PRRB reinstated it. The Deputy Administrator then reversed the PRRB in finding that Medicare would not reimburse Greene for the costs of accrued, unused employees' sick leave.

All of the appeals in this case are brought pursuant to section 1395oo(f).

### C. *Discussion*

### 1. Jurisdiction over Greene's 1978 claim.

Before we reach the merits of the labor/delivery issue, we must address the Secretary's argument that we have no jurisdiction over Greene's reimbursement claim for 1978. The Secretary asserts that under the statutory provision for review of Medicare reimbursement decisions, section 1395oo, any claim for reimbursement for less than $10,000 can be appealed to no higher authority than the Secretary. Greene's reimbursement claim for 1978 amounts to $8,800, and the hospital admits

---

2. The census-taking hour is midnight.

3. Section 1395oo; see also 42 C.F.R. § 405.1835.

4. The Secretary has authority to affirm, modify or reverse decisions of the PRRB, and this authority has been delegated to the Deputy Administrator for the Health Care Financing Administration. Section 1395oo(f)(1).

that this amount is clearly less than the minimum jurisdictional amount for obtaining PRRB review. Brief of March 15, 1985 at 8. Because both the fiscal intermediary and the Secretary have denied Greene's claim for 1978, the Secretary contends that Greene has exhausted its last opportunity for review.[5]

Greene nevertheless argues that stronger interests lie behind affording judicial review of administrative decisions than in strictly construing the jurisdictional statute. Otherwise, private organizations such as the fiscal intermediaries will have final authority to adjudicate these disputes. Indeed, the court recognizes a presumption favoring judicial review of administrative decisions unless we are faced with the clear command of a statute. *See Barlow v. Collins*, 397 U.S. 159, 166–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1969).

■ While we are sympathetic to Greene's position and recognize the plausibility of its arguments, we are bound by a clear statutory limitation to our authority. Under section 1395oo(f), our review extends only to "any final decision of the [Provider Reimbursement Review] Board or [to] any reversal, affirmance or modification by the Secretary." The PRRB's jurisdiction is itself limited to disputes where the amount in controversy is $10,000 or more. Section 1395oo(a)(2). The PRRB did not in fact review Greene's 1978 claim, and obviously had no jurisdiction to do so; Greene took a final appeal to the Secretary pursuant to the statute, and the Secretary upheld the fiscal intermediary.

Congress further defines our limited jurisdiction over this issue at section 405(h)[6] in stating that "the findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." We

thus follow a simple formula in deciding whether to exercise jurisdiction over Greene's claim: we first determine whether the PRRB has made a final decision. If not, we have no jurisdiction. Here, the PRRB has no jurisdiction because Greene cannot satisfy the amount-in-controversy requirement. Under these conditions and where the Secretary has held a hearing, we may not disturb her decision.

Greene next attempts an end run around the PRRB's jurisdictional requirements by contending that the Secretary's action constitutes a final decision under section 405(g) which is subject to review. The senseless alternative, as stated by Greene, is being forced to file a claim with the PRRB which would automatically be dismissed for lack of jurisdiction. Thus, in the interest of judicial economy we are asked to exercise jurisdiction over the 1978 claim now.

Greene overlooks the practical results of its scenario. We admit that the PRRB likely would dismiss the 1978 claim for lack of jurisdiction, and such appeal could very well be characterized as futile. Nonetheless, Greene still would not be entitled to have the merits of its claim reviewed here. If the PRRB hears a case and decides that it has no jurisdiction, we would review only one issue pursuant to section 1395oo(f): whether the PRRB's denial of jurisdiction was appropriate. If the PRRB does *not* hear a case because a provider decides it does not meet the jurisdictional requirements, we cannot review the claim without invading the Secretary's authority under section 405(h). In sum, Greene has shown no basis for our jurisdiction over its 1978 claim because of Congress' limitation that only claims over $10,000 are entitled to judicial review.

Finally, Greene asserts that we should transfer its 1978 claim to the United States Claims Court should we refuse jurisdiction.

---

**5.** The denial of $8,800 in reimbursement was never reviewed by the PRRB. The question was made part of this action by an amendment to Greene's complaint.

**6.** Section 1395ii incorporates section 405(h) into the Medicare subchapter (XVIII) to the same extent it applies to the old age, survivors, and disability subchapter (II).

Greene cites one case which the Claims Court decided involving an amount less than $10,000. *Milford Memorial Hospital, Inc. v. United States,* 675 F.2d 270 (Ct.Cl. 1982). The opinion indicates that plaintiff there had a hearing before the fiscal intermediary and review by the Secretary, but makes no mention of jurisdiction. *Id.* at 271. Contrasting the ambiguity of this authority against the relative clarity with which Congress defines the scope of our jurisdiction, we are not convinced that Greene's 1978 claim is properly transferable to the United States Claims Court.

2. *The Merits of the Labor/Delivery Claims.*

■ Our path in considering the merits of the labor/delivery issue has been smoothed since the Court of Appeals for the District of Columbia handed down its benchmark opinion on the issue in *Saint Mary of Nazareth Hospital Center v. Schweiker,* 718 F.2d 459 (D.C.Cir. Sept. 23, 1983). Although the Court of Appeals for the Third Circuit has not had the opportunity, three other circuits have explicitly followed *Saint Mary of Nazareth Hospital* in deciding the labor/delivery issue. *Beth Israel Hospital v. Heckler,* 734 F.2d 90 (1st Cir. May 18, 1984); *Baylor University Medical Center v. Heckler,·* 730 F.2d 391 (5th Cir. April 23, 1984); and *International Philanthropic Hospital Foundation v. Heckler,* 724 F.2d 1368 (9th Cir. Jan. 31, 1984). This authority is not only unified, it hinges on an opinion that is thorough and well-reasoned. We also are compelled to adopt the opinion of the Court of Appeals for the District of Columbia. We, therefore, will reverse the Secretary's decision to include labor/delivery patients in the formula for calculating Medicare reimbursement for routine inpatient care. We do so according to the scope of our review as outlined by the Administrative Act, 5 U.S.C. § 706(2)(a), that the Secretary's decision is unsupported by substantial evidence.[7]

In reversing the Secretary's labor/delivery reimbursement policy in *Saint Mary of Nazareth Hospital,* the court also remanded the case to the district court "with instructions to remand to the PRRB for the limited purpose of taking evidence on the issue of whether the use of other ancillary services by Medicare beneficiaries at the census-taking hour suffices to compensate for the dilution of Medicare reimbursement caused by including labor/delivery area patients in the calculation of average general routine costs per diem." 718 F.2d at 474. That is, although the Secretary had no supportable reason at the time, she was permitted another opportunity to submit evidence before the PRRB showing why labor/delivery patients should be counted in calculating costs of routine services. "One such factor," for example, "is that maternity patients create greater routine costs once they are transferred to a routine care area than the average routine costs of other patients." *Beth Israel Hospital,* 734 F.2d at 92. We likewise will order this case remanded to the PRRB. The Secretary may then, if she chooses, set forth other possible accounting considerations that may support her inclusion of labor/delivery patients in the formula for calculating routine costs.

## II. GREENE'S SICK–LEAVE CLAIM.

■ The final issue in this case concerns reimbursement for Greene's payments to its employees in lieu of unused sick leave. Under their collective bargaining agreements, Greene's employees could accrue sick leave days that they had earned but not taken. Upon leaving the hospital's employment for any reason other than being fired, Greene was obligated to pay these employees a specified rate for each unused day of sick leave. Greene sought reimbursement for its total liability for unused sick leave for 1979, but the fiscal intermediary reduced its claim by $54,711. The

7. Section 1395oo(f) incorporates the standards of review from the Administrative Procedure Act.

PRRB reversed this decision and permitted Greene's claim for its full liability. The Deputy Administrator of the Health Care Financing Administration then reversed the PRRB.

As stated above, health care providers such as Greene are entitled to reimbursement for their reasonable costs pursuant to the established regulatory procedure. Section 1395x(V)(1)(A). The regulation at issue here is the one requiring accrual basis accounting.

> Providers receiving payment on the basis of reimbursable costs must provide adequate cost data .... the cost data must be based on an approved method of cost finding and on the accrual basis of accounting. ... under the accrual basis of accounting, revenue is reported in the period when it is earned, regardless of when it is collected, and expenses are reported in the period in which they are incurred, regardless of when they are paid.

42 C.F.R. § 405.453(a) and (b)(2).

The Secretary argues that Greene's sick leave plan is a form of deferred compensation that is not certain enough to be reimbursed. There is no specified future time when the employees will receive these payments. The Secretary finds this same uncertainty in the amount payable, since this figure depends upon the amount of forfeitures[8] and the rate of payment set by the collective bargaining agreements. The Medicare program, in the Secretary's opinion, requires greater certainty before HHS will agree to reimburse providers. Both parties have stated the decisive issue in similar terms: we must determine whether Greene's sick leave costs were "actually incurred".

We believe the Secretary's own regulation requiring accrual basis accounting resolves this almost metaphysical problem. Using the accrual basis to report its Medicare-reimbursable expenses, Greene must report those expenses in the period in which they are incurred. We will assume that incurred means the first period when it foresees it will have a debt in any later period.

We do not find any fatal lack of certainty in Greene's claim that cannot be expected under this system. Greene's payment rates for unused sick leave days are set by contract. This rate may change from contract to contract, but all parties know exactly which rates apply to each employee during any specified contract period. The date the employees actually receive payment is much less predictable, but this aspect loses relevance when we consider that Greene must use accrual basis accounting, which specifies when to report a debt as existing. At a given point, we think Greene can easily calculate its sick leave liability by multiplying three figures: the number of eligible employees, the number of unused sick days, and the applicable rates.

The Secretary does not so much dispute this calculation as she does the time of payment. She approved McKeesport's sick leave plan because "in that case the provider's employees could accumulate a limited number of sick days and demand cash payment for the accumulation at the end of the year." Hearing Record at 14. Thus the decisive factor for the Secretary apparently is when the hospital employees actually receive payment. This emphasis seems ill-founded in light of the principle of accrual basis accounting that the actual time of payment is insignificant.

We think the Secretary's other objections to Greene's sick leave plan are meritless. The fact that Greene's sick leave rates are fixed by contract causes no appreciable uncertainty. Any employee's rate can be ascertained for any period by referring to his labor contract for that period. As to the forfeiture of sick leave for employees who are fired, the court finds no evidence that the amount forfeited reaches any significance relative to the amount claimed. This absence of evidence is consistent with our experience of the frequency of employee discharges for cause.

8. As stated above, employees who are fired forfeit their right to sick leave payments.

We find further support for our conclusions in the district court's opinion in *Medical Society of South Carolina d/b/a Roper Hospital v. Heckler*, [1984–1 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 33,651 (D.S.C. Feb. 27, 1984), where the parties positions were virtually identical to the positions of the parties here. The court there concluded that the hospital's contractual obligations justified finding that it had actually incurred a debt to its employees for their unused sick days.

## SUMMARY

On the labor/delivery issue, we will assume no jurisdiction over Greene's 1978 claim because of the clear command of Congress which limits our jurisdiction to appeals from the PRRB. We will follow the wisdom of the Court of Appeals in *Saint Mary of Nazareth Hospital*, supra, in invalidating the Secretary's inclusion of labor/delivery patients in the routine inpatient count, but likewise remanding to the PRRB to give the Secretary an opportunity to prove her assertions with other accounting data if she chooses. On the sick leave issue, the Secretary's refusal to reimburse Greene's 1979 sick leave claim is not supported by substantial evidence. The calculations made under Greene's sick leave plan are as definite as the required form of accounting allows.

## ORDER

On the labor/delivery issue in Civil Action No. 82–897 and Civil Action No. 82–1609, the plaintiffs' motions for summary judgment are GRANTED and the defendants' motions for summary judgment are DENIED. These cases are hereby REMANDED to the Provider Reimbursement Review Board for further findings on the issue in accordance with the opinion of the Court of Appeals for the District of Columbia Circuit in *Saint Mary of Nazareth Hospital Center v. Schweiker*, 718 F.2d 459 (D.C.Cir.1983).

On the sick leave issue in Civil Action No. 82–1609, plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED. The Secretary's decision is REVERSED and JUDGMENT is ENTERED in favor of Greene County Memorial Hospital and against the Secretary in the amount of $54,711.