724 F.2d 1368
 3 Soc.Sec.Rep.Ser. 379, Medicare&Medicaid Gu 33,587
INTERNATIONAL PHILANTHROPIC HOSPITAL FOUNDATION, Appellant,
v.
Margaret O. HECKLER,* Secretary of Health &
Human Services, Appellee.
 No. 82-5847.
 United States Court of Appeals,
Ninth Circuit.
 Argued April 7, 1983.
Submitted Oct. 3, 1983.
Decided Jan. 31, 1984.
 
 Patric Hooper, Weisberg & Aronson, Inc., Los Angeles, Cal., for appellant.
 Ian Fan, Carolyn M. Reynolds, Asst. U.S. Attys., Los Angeles, Cal., for appellee.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, TANG and FLETCHER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff hospital, a Part A Medicare provider, appeals the dismissal of its action against the Secretary challenging two rulings by the Deputy Administrator which adjusted downward the hospital's claims for reimbursement.
 
 
 2
 Two principal issues were presented in the review sought in the district court: (1) the exclusion of labor and delivery room patients from the inpatient routine population for purposes of calculating the average per diem cost of general routine inpatient care, and (2) the correct time for submitting of a request for an exception from the standard hourly rate for physical therapy costs under Medicare.
 
 
 3
 Because the labor and delivery room issue has been fully answered in a careful and scholarly opinion by Judge McGowan, and because the parties have not convinced us that we can improve upon that decision, we follow the lead of the District of Columbia Circuit in Saint Mary of Nazareth Hospital Center, et al. v. Schweiker, 718 F.2d 459 (D.C.Cir.1983). That case held that labor and delivery room patients should not be counted among the routine inpatient population at the midnight census. However, it made its holding subject on remand to a finding (unless the Secretary chooses not to contest the issue) that the number of Medicare patients found nationally in other ancillary areas at the census hour is not sufficient to offset the dilution of Medicare reimbursement created by the inclusion of the excluded patients.
 
 
 4
 The remaining issue, concerning the proper interpretation of the regulations applicable to the reimbursement of physical therapy costs, is largely controlled by the standard of review of agency actions of this kind. We are not at liberty to set aside the Secretary's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706. Asarco, Inc. v. U.S. E.P.A., 616 F.2d 1153, 1158 (9th Cir.1980).
 
 
 5
 The hospital obtains physical therapy service for its patients by contract with a third party and pays a percentage of its physical therapy revenue to the contract provider. Medicare reimburses hospitals for physical therapy at an hourly rate limited to the approximate cost to the hospital had it provided the service using its own employees. 42 U.S.C. Sec. 1395x(v)(5)(A). Exceptions to these limits were established, however, including one for "unique circumstances." 42 C.F.R. Sec. 405.432(f)(2). In April 1976, the Secretary issued Health Insurance Manual (HIM) 15 Sec. 1414.2, requiring a provider to submit a request for an exception "prior to the onset of its cost reporting period." The plaintiff hospital did not submit a request to cover cost years 1977, 1978, and 1979 until November 1979.
 
 
 6
 Blue Cross, the intermediary in this case, determined that the hospital should be granted an exception to the reimbursement limits for 1980 because of the unique services offered, but declined to award amounts over the statutory limits for the years 1976-1979 because of the hospital's failure to request the exception prior to the onset of its cost reporting period. The district court, 568 F.Supp. 781, affirmed the intermediary's action and the agency's denial of relief for the years 1977, 1978, and 1979.
 
 The hospital argues that:
 
 7
 (1) the Secretary has acknowledged the hospital's qualification for the exception to the physical therapy reimbursement limits;
 
 
 8
 (2) the hospital could not have known, before the onset of the fiscal period, whether it would exceed the limits;
 
 
 9
 (3) Blue Cross itself had not determined the actual limit to be applied to the hospital until after the cost reports had been submitted and audited; and
 
 
 10
 (4) submission by the hospital before the beginning of the cost reporting periods was not necessary for Blue Cross to decide whether the hospital qualified for an exception.
 
 
 11
 The hospital further argues that if the Secretary's decision is upheld, the hospital will not be allowed to recover its reasonable costs, and the purposes of the Medicare statute will be frustrated. The hospital also asserts the unreliability of estimating, before the beginning of its fiscal period, whether it will exceed the Medicare limits and need an exception. The hospital points out that the Secretary, in an October 1982 amendment to HIM-15 Sec. 1414.2 (the relevant provision) has now allowed the filing of exception requests up to ninety days after the close of a reporting period.
 
 
 12
 The Secretary counters by pointing out that the hospital failed to file a specific request for an exception until almost four years after the onset of the 1976 cost year. The Secretary argues that even if the hospital may have been entitled to an exception had it timely filed a request, it does not follow that the Secretary's application of HIM-15 Sec. 1414.2 is grounds for reversal. Moreover, the Secretary states that the purpose of regulation is to encourage providers to evaluate costs so that, if necessary to stay within the Medicare limits, providers could attempt early on to reduce costs. Though not explicitly stated, presumably the Secretary's reasoning is that by failing to request an exception early, the hospital would not have the same heightened consciousness of costs that a complying hospital would have. The ability to pass along costs is a well known disincentive to economize.
 
 
 13
 The manual provision at issue is neither a statute nor a regulation. Indeed, the Secretary's own administrator has said that an HIM "does not have the binding effect of the law and regulations. The Manual is merely a guide for intermediaries in applying the governing law and regulations." Pomona Valley Community Hospital v. Blue Cross Association/Blue Cross of Southern California, (Health Care Financing Administration Decision, p. 6 (1981)).
 
 
 14
 In finding for the Secretary, however, the district court concluded that the application of HIM-15 Sec. 1414.2 was consistent with Congressional intent, expressed in 42 U.S.C. Sec. 1395x(v)(5)(A), to control increasing costs of physical therapy services. The district court also found that because the hospital successfully followed the procedure for filing for an exception for 1980 costs, it could have done so for 1977-79.
 
 
 15
 We find nothing in the Secretary's decision on this close question that can be characterized as arbitrary, capricious, an abuse of discretion or not in accordance with the law. We agree with the trial judge's conclusion that the Secretary's interpretation conforms to the Congressional intent, and was well within the area of discretion conferred upon the Secretary by statute. Accordingly, the summary judgment in the district court upon that portion of the hospital's claim challenging the Secretary's decision on the physical therapy reimbursement is affirmed. That portion of the summary judgment denying relief to the hospital on the labor room-delivery room issue is reversed and the cause is remanded for proceedings in the district court, if necessary, to cause the intermediary to recalculate the relevant payments in accordance with the teaching of Saint Mary of Nazareth Hospital Center, et al. v. Schweiker, supra.
 
 
 16
 Affirmed in part and reversed in part and remanded.
 
 
 
 *
 Secretary Margaret O. Heckler is substituted for her predecessor, Richard S. Schweiker, pursuant to Fed.R.App.P. 43(c)