761 F.2d 354
 9 Soc.Sec.Rep.Ser. 342, Medicare&Medicaid Gu 34,588
CENTRAL DuPAGE HOSPITAL, et al., Plaintiffs-Appellees,
v.
Margaret HECKLER, Secretary of Health and Human Services,
Defendant-Appellant.
JOHNSON COUNTY MEMORIAL HOSPITAL, et al., Plaintiffs-Appellees,
v.
Margaret HECKLER, Secretary of Health and Human Services,
Defendant-Appellant.
 Nos. 83-3255, 83-3259.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 16, 1984.
Decided April 25, 1985.
 
 Marlene R. Abrams, Reg. Atty., Chicago, Ill., Henry Goldberg, Dept. of Health & Human Services, Washington, D.C., for defendant-appellant.
 Dennis M. Barry, Wood, Lucksinger & Epstein, Washington, D.C., William S. Hall, Hall, Render & Killian, Indianapolis, Ind., for plaintiffs-appellees.
 Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and SWYGERT, Senior Circuit Judge.
 ESCHBACH, Circuit Judge.
 
 
 1
 In these consolidated appeals the Secretary of Health and Human Services seeks reversal of district court decisions disapproving her policy of counting patients who are in the labor/delivery area of a hospital at the census hour of midnight as having received a full day of routine care for purposes of calculating Medicare's share of the hospital's costs of routine care. We conclude that the cases should be remanded to the Provider Reimbursement Review Board to enable the Secretary to introduce evidence that the dilution of routine care reimbursement created by her policy is offset by other factors in the reimbursement calculus.
 
 
 2
 * Medicare reimburses hospitals annually for their costs of providing routine care to Medicare patients by using an average cost formula.[1] A hospital computes the average per diem cost of routine care for all patients by computing its total annual cost for all patients and dividing it by the number of patient-days of routine care provided. It then multiplies by the number of Medicare patient-days in the year to arrive at the amount to be reimbursed by Medicare. For the purpose of computing the number of patient-days, the day of admission is counted as a whole day and the day of discharge is disregarded. Fractional days are not used. A daily census is taken at midnight. The Secretary has instructed hospitals, by interpretation of her regulations,[2] to count any patient who is in the labor/delivery area at the midnight census as having had a full day of routine care, even though such patients, on admission, are generally taken straight to the labor/delivery area and actually receive no routine care on that day.[3]
 
 
 3
 In No. 83-3255 twenty-two Illinois hospitals joined to seek redress for alleged lost Medicare reimbursement for fiscal years 1977-1980 traceable to the Secretary's labor/delivery policy. In their annual cost reports to their fiscal intermediary[4] for the years in question, the hospitals excluded from their count of routine patient days those days attributable to maternity patients in the hospital's labor/delivery area at the census hour of midnight. The intermediary adjusted these cost reports to count such days as routine patient days. The hospitals appealed to the Provider Reimbursement Review Board (PRRB),[5] which found in their favor. The Deputy Administrator of the Health Care Financing Administration, acting as the Secretary's delegate, elected to review the PRRB decision and reversed it. The hospitals then filed a complaint for judicial review in the district court, pursuant to 42 U.S.C. Sec. 1395oo (f).
 
 
 4
 The district court, following Saint Mary of Nazareth Hospital Center v. Schweiker, 718 F.2d 459 (D.C.Cir.1983), accepted the hospitals' argument but decided to remand the case to the PRRB for the limited purpose of determining whether the number of Medicare patients found nationally in ancillary areas other than the labor/delivery area at the midnight census is sufficient to offset the dilution of Medicare reimbursement created by counting labor/delivery patients in the routine inpatient count. The court ordered further that if the Secretary could prove no such offset, or if she conceded that she could not, she must omit from the calculation of the average cost per diem for routine services those labor/delivery patients who have not actually received routine services that day.
 
 
 5
 The Secretary subsequently conceded that she could not prove the offset in the limited way allowed by the court and moved for entry of judgment. The court entered final judgment for the hospitals on March 8, 1984.
 
 
 6
 In No. 83-3259 sixty-one Indiana hospitals joined to challenge the same policy. On their cost reports for fiscal years 1977 and 1978 the hospitals excluded patients who were in labor/delivery rooms at the daily census-taking hour from their computations of average routine per diem costs. The fiscal intermediary made audit adjustments including those patients in the computation. The hospitals sought a hearing before the PRRB, which reversed the intermediary's decision. The Administrator of the Health Care Financing Administration then reversed the decision of the PRRB. The hospitals filed this action for judicial review in the district court pursuant to 42 U.S.C. Sec. 1395oo (f). The district court, in a thorough discussion of the issue, considered all the Secretary's defenses of her policy and rejected them, reversing the Administrator without remand. Johnson County Memorial Hospital v. Heckler, 572 F.Supp. 1538 (S.D.Ind.1983).
 
 II
 
 7
 The issue presented to us is whether the Secretary's policy of counting any patient who is in the labor/delivery area at the midnight census as having had a full day of routine care is rational. The hospitals contend that it is irrational, because it results in an obvious overcounting of patient-days of routine care. Patients in the labor/delivery area at the midnight census are treated as having had a full day of routine care, even though in fact the vast majority has had none. This overcounting, they argue, inflates the denominator in the average per diem cost fraction without affecting the numerator. As a result, the hospitals further contend, the figure obtained as the average per diem cost of routine care for a given year is necessarily too low, and because Medicare's share of routine care costs is computed by multiplying that figure by the number of Medicare patient-days in the year, the resulting reimbursement by Medicare for routine care costs is also necessarily too low. Thus, the hospitals contend, the Secretary's policy causes non-Medicare patients to subsidize Medicare patients, contrary to 42 U.S.C. Sec. 1395x(v)(1)(A).
 
 
 8
 Four courts of appeals have considered the issue before us, and all have ruled against the Secretary. Beth Israel Hospital v. Heckler, 734 F.2d 90 (1st Cir.1984); Baylor University Medical Center v. Heckler, 730 F.2d 391 (5th Cir.1984) (per curiam); International Philanthropic Hospital Foundation v. Heckler, 724 F.2d 1368 (9th Cir.1984) (per curiam); Saint Mary of Nazareth Hospital Center v. Schweiker, 718 F.2d 459 (D.C.Cir.1983). We find the thorough analysis of the Court of Appeals for the District of Columbia Circuit in Saint Mary of Nazareth fully persuasive, and we adopt its reasoning as our own, as have the Courts of Appeals for the First, Fifth, and Ninth Circuits, in the cases cited supra.[6] On the basis of that reasoning we hold that it is irrational to count patients in the labor/delivery area at the census-taking hour of midnight as having had a full day of routine care if in fact they have had no routine care on that day, unless it can be shown that the reimbursement lost to the hospitals as a result of this policy is offset by excess reimbursement attributable to some other factor in the Medicare reimbursement formula as applied to the hospitals in question.[7]
 
 
 9
 The Secretary seeks a remand to the PRRB for the purpose of enabling her to make such a showing. The hospitals oppose any remand, on the grounds that the theory of offset that the Secretary proposes to prove by evidence is contrary to her own regulations, that it is an untimely post hoc rationalization not raised in the administrative proceedings below, that any remand is unfair and prejudicial to the hospitals, and that other courts of appeals have not issued so broad a remand.
 
 
 10
 The Secretary has stated that she has evidence to prove that any imbalance in Medicare reimbursement resulting from her labor/delivery policy is amply offset by the higher costs of routine care incurred by maternity and pediatric routine care patients, virtually none of whom is a Medicare patient. The hospitals argue that the Secretary is trying to give greater weight to certain inpatient days, thereby violating her own regulations requiring that days of routine care be counted without regard to variation in the amount of service which a day of care may represent. See 42 C.F.R. Sec. 405.403(d), .452(d)(7) (1981). These regulations, however, govern accounting for purposes of Medicare reimbursement and do not apply when, as here, the Secretary is required to look behind the accounting conventions to the underlying reality for the purpose of justifying those conventions. To require adherence to the accounting rules in examining the real states of affairs they purport to describe would frustrate any effort to justify those rules.
 
 
 11
 The hospitals contend that the Secretary should have introduced her evidence in the administrative proceedings below and that it is too late for her to do so now. They say that she is trying to rationalize her policy after the fact, contrary to such cases as Citizens To Preserve Overton Park v. Volpe, 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). We think that the Secretary may be excused from not having presented evidence of an offset before the PRRB, because the Secretary was not a party to the proceedings before the PRRB and had no burden to present evidence. Her policy was supported there by the hospitals' fiscal intermediaries.[8] In each case, when the PRRB ruled in favor of the hospitals, the Health Care Financing Administration elected to review the PRRB decision and reversed it. These decisions constituted decisions of the Secretary. In each case, the hospitals sought review of the Secretary's decision in federal district court, as provided in 42 U.S.C. Sec. 1395oo (f). They properly named the Secretary as the defendant in those actions, because it was her decision of which they sought review. Thus the Secretary became a party in this chain of proceedings for the first time in the district court. But the scope of the district court's review is limited by the Administrative Procedure Act, 5 U.S.C. Sec. 706, which does not permit the hearing of new evidence. Thus the Secretary has not so far had a fair opportunity to introduce her evidence into the record.
 
 
 12
 The hospitals' references to "post hoc rationalization," citing Overton Park, suggest a different argument. Overton Park, in disapproving post hoc rationalizations, cited Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). 401 U.S. at 419, 91 S.Ct. at 825. Burlington Truck Lines, in turn, says the following:
 
 
 13
 The courts may not accept appellate counsel's post hoc rationalizations for agency action; Chenery requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself....
 
 
 14
 Id., 371 U.S. at 168-69, 83 S.Ct. at 245-46 (referring to SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)). The argument that these citations suggest is that the Secretary had her chance to uphold the rationality of the labor/delivery policy on the basis of evidence of an offset when the matter was before the Health Care Financing Administration. The Administration concluded that the policy was rational, but not for the reason the Secretary now urges; a reviewing court is therefore confined by Chenery to ruling on the soundness of the reasons the Administration actually gave and cannot consider new "post hoc rationalizations."This argument, though superficially plausible, is mistaken. The Chenery doctrine, echoed in Burlington Truck Lines and Overton Park, is only that a reviewing court cannot affirm an agency decision on grounds other than those invoked by the agency. See Chenery, 332 U.S. at 196, 67 S.Ct. at 1577. But in each of the cases before us, the district court reversed the Health Care Financing Administration. The Chenery doctrine is also binding on us and bars us from reversing the district courts and reinstating the Administration's decisions on grounds not invoked by the Administration. But that is not what we propose to do. Nothing in the Chenery doctrine bars us from remanding these cases to the administrative agency for further proceedings leading to new decisions. Indeed, in the original Chenery case, SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), the Supreme Court held that an order of the SEC could not be sustained on the grounds upon which that agency acted and directed that the case be remanded for further proceedings. The SEC then reached the same decision for different reasons, and the Supreme Court upheld the decision in the second Chenery case, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Thus, even if the Secretary's new theory is a "post hoc rationalization," she is not barred from seeking a remand to enable the agency to consider it, nor are we barred from ordering such a remand.
 
 
 15
 While we are aware that a remand adds to the costs of all parties in this litigation, the issue of the rationality of the Secretary's labor/delivery policy has not yet been, and on the present record cannot be, definitively resolved. A remand is therefore necessary. Litigation of the scope and significance of these cases is bound to be expensive and time-consuming. We do not believe, however, that a remand prejudices the hospitals in their rights. Until the issue is definitively resolved, their rights remain undetermined. Of course, the remand introduces an additional risk that the hospitals will ultimately lose on the merits, but that is not a form of prejudice that we can or should relieve.
 
 
 16
 Finally, the hospitals argue that the remand the Secretary seeks is broader than those granted by other courts of appeals that have ruled in similar cases. It is true that the remand in Saint Mary of Nazareth was limited to the taking of evidence on the specific question whether the number of Medicare patients found in other ancillary areas at the census hour is sufficient to offset the dilution of Medicare reimbursement created by her labor/delivery policy. It is also true that the identical remand was issued by the Court of Appeals for the Ninth Circuit in International Philanthropic Hospital Foundation v. Heckler, 724 F.2d 1368 (9th Cir.1984) (per curiam). The Secretary has conceded that she cannot prove the affirmative answer to that question. But we see no reason why her opportunity to prove an offset should be so restricted. An offset is an offset, wherever it occurs. The Court of Appeals for the First Circuit issued a broader remand, allowing the Secretary to show that the dilution of the hospital's Medicare reimbursement is offset by other factors in the Medicare system.[9] Beth Israel Hospital v. Heckler, 734 F.2d 90, 92 (1st Cir.1984). We agree with this approach and follow it here.
 
 
 17
 Accordingly, we remand these cases for the purpose of enabling the Secretary to adduce evidence before the PRRB that the dilution of the hospitals' Medicare reimbursement is offset by other factors in the Medicare system. As noted above, one such factor the Secretary suggests is that maternity patients create greater routine care costs once they are transferred to a routine care area than the average routine costs of other patients. The Secretary should be allowed to introduce additional evidence pertaining to such an offset.
 
 
 18
 If the Secretary is unable to prove an offset, then she must recompute the reimbursement due the plaintiff hospitals for the routine care costs of Medicare patients for the years in question, using a rational method of accounting for the routine patient care days attributable to patients who are found in the labor/delivery area at midnight, and settle accounts accordingly. We shall not prescribe to the Secretary the method she must use in making the recomputations (should they prove necessary) but shall defer to her expertise in the methodology of Medicare reimbursement, noting only that the method she adopts must be rational and consistent with this opinion and with 42 U.S.C. Sec. 1395x(v)(1)(A), forbidding cross-subsidization.
 
 III
 
 19
 The judgments of the district courts are vacated and the cases are remanded with directions to vacate the decisions of the Administrator of the Health Care Financing Administration (in No. 83-3259) and of the Deputy Administrator (in No. 83-3255) and to remand the cases to the Provider Reimbursement Review Board for further proceedings in conformity with this opinion.
 
 
 20
 SO ORDERED.
 
 
 
 [1]
 The governing statutes and regulations are found at 42 U.S.C. Secs. 1395f(b)(1), 1395x(v)(1)(A), and 42 C.F.R. Sec. 405.452(d)(7) (1981)
 
 
 [2]
 Provider Reimbursement Manual Sec. 2345
 
 
 [3]
 This latter rule is a special case of the Secretary's more general rule that any patient found in an ancillary care area at midnight is counted as having had one full day of routine care. Ancillary care areas include surgery, x-ray, physical therapy, the emergency room, the labor/delivery area, and certain other areas that serve special functions for which a separate charge is customarily made. The general rationale for the rule is that a patient in an ancillary area at midnight will in the vast majority of cases have been taken there during the day from a routine care area and thus will have received some routine care on that day. Patients in the labor/delivery area are an exception to this rationale, as indeed are emergency room patients. The costs of services provided to Medicare patients while in an ancillary care area are accounted for and reimbursed separately from routine care costs
 
 
 [4]
 Fiscal intermediaries are public or private organizations that review claims for reimbursement and administer payments. See 42 U.S.C. Sec. 1395h
 
 
 [5]
 The Provider Reimbursement Review Board is empowered to hear and decide appeals by health care providers from decisions of their fiscal intermediaries. 42 U.S.C. Sec. 1395oo (a). A decision of the PRRB is final unless the Secretary, on her own motion, and within 60 days after the provider of services is notified of the decision, reverses, affirms, or modifies it. 42 U.S.C. Sec. 1395oo (f)(1). The Secretary has delegated her authority under this provision to the Administrator of the Health Care Financing Administration
 
 
 [6]
 The Court of Appeals for the Sixth Circuit heard arguments in a case presenting the same issue and decided to remand the case to the Secretary without reaching the merits, for further consideration in the light of Saint Mary of Nazareth. University of Tenn. v. Dep't of Health and Human Servs., 737 F.2d 579 (6th Cir.1984) (per curiam). The Court of Appeals for the Fifth Circuit, in an unpublished opinion, also remanded a case to the PRRB to enable the Secretary to prove an offset. Tarrant County Hosp. Dist. v. Heckler, 740 F.2d 966 (5th Cir.1984) (per curiam)
 
 
 [7]
 We note that the finding of irrationality in Saint Mary of Nazareth is properly limited to the counting of midnight labor/delivery patients as having had a day of routine care when they have had no such care at all. It is not irrational to count such patients as having had a day of routine care if they were provided routine care before being admitted to the labor/delivery area
 
 
 [8]
 The fiscal intermediaries likewise bore no burden to produce evidence. See Fairfax Hosp. Ass'n v. Califano, 585 F.2d 602, 611 (4th Cir.1978)
 
 
 [9]
 The Court of Appeals for the Fifth Circuit has also remanded a case to enable the Secretary to prove the same theory of offset she advances here. Tarrant County Hosp. Dist. v. Heckler, 740 F.2d 966 (5th Cir.1984) (per curiam)