792 F.2d 715
 14 Soc.Sec.Rep.Ser. 60, Medicare&Medicaid Gu 35,426
SIOUX VALLEY HOSPITAL, a South Dakota non-profit corporation, Appellee,
v.
Otis R. BOWEN, in his capacity as Secretary of Health and
Human Services, Appellant.
 No. 85-5219.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1986.
Decided June 2, 1986.
 
 Marc Richman, Washington, D.C., for appellant.
 William J. Keppel, Minneapolis, Minn., for appellee.
 Before HEANEY and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.
 HANSON, Senior District Judge.
 Secretary Bowen[1] appeals from a decision of the district court holding that labor/delivery room patients who have not previously that day received routine service may not be included in the inpatient count used to determine Sioux Valley Hospital's Medicare reimbursement and requiring the Secretary to recompute the Hospital's reimbursement accordingly. For all of the reasons stated below, we affirm the decision of the district court.[2]
 I. BACKGROUND
 At issue is the reimbursement amount of Medicare payments to the Hospital. The amount is determined by apportioning a hospital's total allowable costs between its medicare and non-Medicare patients.[3] There are three types of calculations: (1) for routine services in general areas; (2) for routine services in special areas; and (3) for ancillary services such as X-ray service. The dispute in the instant case centers around the distinction between routine services in general areas and ancillary services.
 Medicare reimburses certified health care institutions for "the lesser of (A) the reasonable cost of such services, as determined under section 1395x(v) of this title * * * or (B) the customary charges with respect to such services * * *." 42 U.S.C. Sec. 1395f(b)(1) (1982). Section 1395x(v)(1)(A) provides that "[t]he reasonable cost of any services shall be the cost actually incurred, excluding" unnecessary costs for the efficient delivery of health services. Costs "shall be determined in accordance with regulations establishing the method to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." That section also states that, although the Secretary has considerable latitude in establishing these regulations,
 the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs * * *."
 42 U.S.C. Sec. 1395x(v)(1)(A)(i).
 The dispute in this case has to do with the treatment of labor/delivery room patients as routine for purposes of the routine inpatient census count and as ancillary for purposes of the costs that labor/delivery room patients generate. The labor/delivery room area is an ancillary area. See Provider Reimbursement Manual Sec. 2202.8 ("PRM"). For cost reporting years beginning in September 1, 1976, HHS required that patients in ancillary areas at the census hour of midnight be included in the inpatient routine population. Ancillary costs, however, are reimbursed separately. 42 C.F.R. Sec. 405.452(b) (1980). The Hospital maintains that it receives less reimbursement when non-Medicare labor/delivery patients are counted in the routine census.
 In claiming Medicare reimbursement for fiscal year ending April 30, 1981, the Hospital calculated its average per diem routine costs by excluding from the count of routine inpatient days those patients in the Hospital's labor/delivery area who had not used the routine services as of the census-taking hour. This calculation, the Hospital argues, is justified in light of the fact that a maternity patient entering the Hospital is escorted to the labor/delivery room without being formally admitted. After two hours she is evaluated to determine if labor was false. If false labor occurred, she is sent home and charged as an outpatient for the usage of supplies only. If, on the other hand, the evaluation indicates that labor and delivery are imminent, the maternity patient remains in the labor/delivery room. If the maternity patient is still in the labor/delivery room during the midnight census count, the census sheet will indicate this fact. There is no separate room charge for maternity patients who have left the labor/delivery room, even though the maternity patient had been in the labor/delivery room during the census-taking hour. Only after delivery is the new mother assigned a room, at which time routine services are charged against her bill.
 The government's intermediary, Blue Cross of Western Iowa and South Dakota and Blue Cross/Blue Shield Association, adjusted the Hospital's cost report to include in the count of inpatient days all patients in the Hospital's labor/delivery area at the census-taking hour. The result of this adjustment was to attribute to non-Medicare maternity patients in the labor/delivery area routine costs for routine services, and to reduce Medicare payment for routine services furnished to Medicare beneficiaries at the Hospital.
 The Hospital appealed the action of the intermediary to the Provider Reimbursement Review Board (PRRB), which reversed (as it has in every such case brought before it).[4] The Deputy Administrator of the Health Care Financing Administration (HCFA) reversed the PRRB's decision (as in almost every previous case the Deputy Administrator has considered).[5]
 On appeal, the district court held in favor of the Hospital, concluding that "there is no rational basis either in fact or law for counting labor/delivery room patients in determining average per diem costs of routine care." The court further ordered that the Secretary was to pay the amount owed to the Hospital for fiscal year ending April 30, 1981 and for subsequent cost-reporting years.
 The Secretary asserts that the record contains unrefuted evidence demonstrating that the labor/delivery room policy is necessary to offset the high cost of care incurred by non-Medicare patients, and that the district court erred when it disregarded this evidence. In addition, the Secretary asserts that the district court erred when it held that the reimbursement policy was irrational, arguing that the district court should have deferred to the expertise of the Secretary. Finally, the Secretary argues that the district court erred when it granted relief for cost years other than the Hospital's 1981 fiscal year.
 II. THE MEDICARE REIMBURSEMENT DISPUTE
 The Secretary raises three arguments on appeal: first, HHS's interpretation is entitled to considerable deference; second, the labor/delivery room policy is a reasonable implementation of the Medicare Act and its regulations; and, third, the affidavits presented to the district court demonstrate that the labor/delivery room policy offsets the higher routine costs incurred by maternity and non-Medicare patients.
 A. Deference
 Deference is due when an agency has developed its interpretation contemporaneously with the regulation, when the agency has consistently applied the regulation over time, and when the agency's interpretation is the result of thorough and reasoned consideration. See Granville House, Inc. v. HHS, 715 F.2d 1292, 1296-97 (8th Cir.1983), quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); Minnehaha Creek Watershed District v. Hoffman, 597 F.2d 617, 626 (8th Cir.1979). The regulation at issue has been subject to considerable confusion as a result of the inconsistent interpretation of reimbursement policy for labor/delivery room patients.
 In 1972 the Bureau of Health Insurance ("Bureau"), the predecessor of the HCFA, gave this instruction with its cost report form 2570:
 If the provider maintains records for labor room days, they should not be included in any of the inpatient day counts used for cost apportionment of routine services since labor room costs must be excluded from the routine service costs.
 Saint Mary of Nazareth Hospital v. Schweiker, 718 F.2d 459, 464 (D.C.Cir.1983) ("St. Mary I "), on remand, 587 F.Supp. 937 (D.D.C.1984), aff'd, 760 F.2d 1311 (D.C.Cir.1985) ("St. Mary II "). This form is in apparent conflict with PRM Sec. 2345. The Secretary maintains that PRM Sec. 2345 was an attempt to eliminate the confusion caused by a Blue Cross Association interpretation of Bureau intent, and that this policy has been consistently applied at least since 1976, the "first time HHS applied its considered judgment to the issue." Reply Brief at 12 n. 15. Furthermore, the Secretary argued to the district court that it had always been the program's policy to include labor/delivery room patients in a routine count. April 28, 1985 Hearing Transcript, J.A. at 60; see also Deputy Administrator's Decision at 7, J.A. at 9.
 HHS alleges that this confusion should not disturb deference owed its consistent interpretation of the policy. However, in 1977 the Deputy Administrator affirmed a decision of the PRRB that agency instructions prior to the promulgation of Sec. 2345 were "wholly inadequate, unclear, and inconsistent." See Accounting for Labor Room Days, [1977 Transfer Binder] Medicare and Medicaid Guide (CCH) p 28,633, at 10,211-12 (HCFA Sept. 12, 1977) (quoting PRRB concurring opinion). Shortly after this decision, HCFA amended Sec. 2345 to make it applicable only to accounting periods ending after it was promulgated. Therefore, despite the claimed consistent interpretation of the regulations, the Deputy Administrator and then the agency accepted reimbursement practices counter to the agency's current interpretation.
 Moreover, Sec. 2345 was apparently adopted without going through the notice and comment rulemaking process and without any clear statement of the basis for the policy it implemented.[6] Apparently, for the first time in 1984 HHS provided the rationale that the labor room day rule was intended to offset what it argued is the greater utilization of routine services by non-Medicare beneficiaries. See St. Mary II, 760 F.2d at 1319; Deputy Administrator's Decision, April 2, 1984, J.A. at 6. See also infra at II. B. for a discussion of the post hoc effect of the Secretary's argument.
 
 
 1
 The erratic history of the labor/delivery room policy is not the kind of interpretation justifying deference to the Secretary's expertise. The district court therefore did not err when it refused to defer to HHS's interpretation of the labor/delivery room reimbursement policy.
 
 B. Rational Basis
 
 2
 The Secretary argues that the labor/delivery reimbursement policy is sustainable without deferring to the Secretary's expertise because the affidavits presented to the Deputy Administrator and the district court show that the policy works fairly. Reply Brief at 12 n. 15. The Medicare statute gives the Secretary broad authority to determine Medicare reimbursement policy and provides for a system of averaging to aid in the efficient administration of the program. The Secretary also argues that under the averaging system one individual policy is not invalid although the result is that some hospitals are paid less than their full costs. The Secretary maintains that it is reasonable to include ancillary area patients in the routine census count because those patients will ultimately receive routine care within the census period, and also because including those patients in the routine census recognizes that those patients incur routine costs while in the ancillary area.[7] The difficulty with the Secretary's interpretation is that it appears to be inconsistent to include ancillary patients in the census count for routine costs they have not incurred, but to exclude ancillary patient costs which they have incurred.
 
 
 3
 Central to the Medicare reimbursement program is that "reasonable costs" are calculated so that non-Medicare payors do not subsidize the care of Medicare patients. 42 U.S.C. Sec. 1395x(v)(1)(A) (1982). Under PRM Sec. 2345 a routine inpatient day is counted for every inpatient in a hospital at midnight. When a maternity patient is admitted directly to the labor area and remains in that area at midnight, Medicare counts those labor room services not only as inpatient days but also as routine days. Therefore, even though labor/delivery patients have incurred no routine costs and Medicare excludes their labor/delivery costs from routine costs, Medicare apportions routine costs to patients in the labor/delivery area.
 
 
 4
 As noted by the St. Mary I court, this anomalous result would not occur if patients in the labor/delivery room area were Medicare beneficiaries and used that area in the same proportion as they utilized other services. Id. at 462 n. 8. The court in St. Mary II concluded that because labor/delivery patients are disproportionately non-Medicare patients, "HHS's reimbursement scheme raises the presumption that non-Medicare patients are forced to subsidize the routine costs of other patients, in violation of 42 U.S.C. Sec. 1395x(v)(1)(A)." 760 F.2d at 1315.
 
 
 5
 Similarly, in this case the Hospital has demonstrated that the class of patients residing in the labor/delivery area at census-taking hour has received no routine care. Therefore, the assumption in the HHS reimbursement scheme that ancillary patients have already received routine care, and as a result can fairly be included in the inpatient count, is not consistent with 42 U.S.C. Sec. 1395x(v)(1)(A)(i).
 
 
 6
 In addition, HHS's argument that it should be allowed to offset the higher costs incurred by labor/delivery patients ignores the requirement in 42 C.F.R. Sec. 403(d) that weighting not be used. See infra at II. C. On the contrary, HHS appears to argue that whenever Medicare patients underutilize a hospital service on a national basis, HHS may offset the difference that occurs from the underutilization. See Reply Brief at 8. This interpretation is inconsistent with HHS's regulation requiring that the average routine costs per day be the same for all patients. See 42 C.F.R. Sec. 405.403(d) (1980).
 
 
 7
 The Secretary's offsetting rationale is further at odds with his refusals, affirmed by the courts, to allow hospitals to separate out from the calculation of average per diem costs for general routine services days of care utilized by Medicare patients who utilize far greater amounts of routine care than does the inpatient population in general. Consistent with 42 C.F.R. Sec. 405.452(d)(10) (1980), which specifically excludes "maternity labor rooms," courts have held that the only exception from the averaging principle are "special care units" (SCU's) as defined in the regulation. See Butler County Memorial Hospital v. Heckler, 780 F.2d 352, 356-57 (3d Cir.1985) (citing cases). In those cases, even though the average per diem costs of units exceeded the average per diem costs for general routine services, the Secretary refused to reimburse the hospitals. Yet, HHS in this case is attempting to do what it will not countenance in the "sub-intensive care" cases, offsetting costs premised on a special unit not provided for in its regulations.
 
 
 8
 HHS could have chosen to define labor/delivery room units as SCU's, and therefore come under the exception in 42 C.F.R. Sec. 405.452(d)(10) (1980), but did not do so. See St. Mary II, 760 F.2d at 1319. As a result, to justify its action with an offsetting rationale clearly is invalid because, under the HHS reimbursement and apportionment process, no special reimbursement treatment may be granted to a particular class of patients unless they qualify as SCU's. See John Muir Memorial Hospital, Inc., et al. v. Davis, Nos. C-81-4731 EFL and C-81-4732, slip op. at 4 (N.D.Cal. Aug. 9, 1984). Therefore, the Deputy Administrator's statement that the Hospital is merely unhappy with the effects of the averaging process, Deputy Administrator's Decision at 6, J.A. at 8, simply does not explain what is essentially an irrational interpretation for an unfair modification of the reimbursement formula.
 
 
 9
 Seven Circuits to date have considered the issue whether the Secretary's reimbursement methodology is rational. Six have expressly ruled against the Secretary and one Circuit has implied that it found the policy to be irrational. Community Hospital of Roanoke v. HHS, 770 F.2d 1257, 1264 (4th Cir.1985); Central DuPage Hospital v. Heckler, 761 F.2d 354, 357 (7th Cir.1985); Beth Israel Hospital v. Heckler, 734 F.2d 90, 92 (1st Cir.1984); Baylor University Medical Center v. Heckler, 730 F.2d 391, 392 (5th Cir.1984) (per curiam); International Philanthropic Hospital Foundation v. Heckler, 724 F.2d 1368, 1371 (9th Cir.1984) (per curiam); St. Mary I, 718 F.2d 474. See also University of Tennessee v. HHS, 737 F.2d 579, 580 (6th Cir.1984) (per curiam) (remanding to district court for consideration in light of St. Mary I ). For the reasons stated above, we too conclude that the method of reimbursement adopted in Sec. 2345 is irrational.
 
 C. The Secretary's Affidavits
 
 10
 The Secretary presented the affidavits of Doctors Fitzmaurice and Cromwell in order to show that non-Medicare patients incur higher routine costs, once they do receive routine care, than the average patient.[8] Therefore, according to the Secretary, counting labor/delivery patients even though they have received no routine services provides the necessary balancing for the later higher costs they incur when they do receive routine services. Appellant's Brief at 23.
 
 
 11
 The Secretary asserts that this is the first case to consider the data developed in response to the remands ordered by the other Circuits which have confronted this issue.[9] He further contends that, while the D.C. Circuit in St. Mary II, 760 F.2d at 1317-19, and the Ninth Circuit in Mount Zion Hospital and Medical Center v. Heckler, 758 F.2d 1346, 1348 (9th Cir.1985), have considered this data, they did not reach the merits, relying instead on the data in connection with their limited remands.
 
 
 12
 The Secretary's contention as to the validity of the affidavits is contingent upon a finding that there is a rational basis for HHS's labor/delivery room policy. However, the affidavits rest on an evaluation of the entire routine care reimbursement system. The issue before the court is whether the labor/delivery room policy is an irrational method of reimbursement with respect to Sioux Valley Hospital. See 42 C.F.R. Sec. 405.402(b)(3) (1980). Therefore, because they address nationwide patterns of reimbursement and not the labor/delivery room dispute concerning this hospital, the affidavits are of little relevance to the dispute before the court. In addition, the affidavits appear to be irrelevant to this case in light of the fact that the costs they compare are not the specific costs generated by labor/delivery patients, but the more general costs of patients who have been admitted to a routine care bed.
 
 
 13
 Even assuming that the affidavits are relevant, their impact must be circumscribed as post hoc rationalizations. The affidavits were introduced midway through the administrative process, some ten years after the instant policy had been established. HHS did not rely on these affidavits during the PRRB hearing. Once before the Deputy Administrator, who had reversed numerous previous PRRB decisions without considering the affidavits, HHS produced the evidence it now contends is central to its offsetting rationale to the ten-year-old labor/delivery room policy. The Deputy Administrator stated that the affidavits were "merely further arguments" justifying HHS's position. Deputy Administrator's Decision at 6, J.A. at 8.
 
 
 14
 An administrative agency's policy cannot be justified merely after-the-fact. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). In this case, HHS did not consider the arguments it raises by way of the affidavits until recently, and only then in response to the holdings of courts that its policy is irrational. The sole purpose for submitting the affidavits is to justify a policy that HHS should have considered ten years ago. It is not therefore surprising that courts have invalidated the HHS affidavits on this basis. See St. Mary II, 760 F.2d at 1315, 1319; John Muir Hospital, slip op. at 4.
 
 
 15
 Furthermore, HHS's contention that the affidavits contain evidence that maternity and pediatric patients consume more routine care once they are admitted to a routine bed, therefore justifying an adjustment to the Medicare reimbursement, amounts to a violation by HHS of its own regulations. 42 C.F.R. Sec. 405.452(d)(7) (1980) provides the method of computing the "average cost per diem for general routine services." Section 452(d)(7) states that the average cost per diem for general routine services is computed "by dividing the total allowable inpatient cost for routine services by the total number of inpatient days of care * * *." Id. There is nothing in this computation which allows for the weighting of days spent in various sub-units of the general routine areas. Rather, 42 C.F.R. Sec. 405.403(d) (1980) expressly states that inpatient days are not to be weighted in this manner. Section 403(d) states in part:
 
 
 16
 This method, commonly referred to as the average per diem cost, does not take into account, variations in the amount of services which a day of care may represent and thereby assumes that patients for whom payment is made on this basis are average in their use of service.
 
 
 17
 By attempting for the first time in 1984 to argue that the weighting of labor/delivery room patients is needed to offset the higher routine costs they incur once they are admitted to the Hospital, HHS has contravened the clear language of its regulation.
 
 
 18
 The district court therefore correctly concluded that the affidavits were insufficient to support the Secretary's policy. For these same reasons it would not have been appropriate for the district court to remand this case to the PRRB to test the merits of the affidavits.[10] The data collected in the Fitzmaurice and Cromwell affidavits cannot salvage what is an irrational policy, and a remand would serve little purpose other than to delay the inevitable result this court would reach.
 
 III. SUBSEQUENT COST REPORTING YEARS
 
 19
 The Secretary also argues that the district court exceeded its authority when it ordered HHS to recompute the Hospital's reimbursement for the subsequent cost reporting years 1982-83. Agencies should be free, even when they err, to work out their own problems without the interference of the courts. In most cases, agency tribunals should be permitted to develop the factual record upon which decisions should be based. See Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). However, when an administrative appeal would be futile and little more than a formality, exhaustion will not be required. See United States v. Blair, 321 U.S. 730, 736, 64 S.Ct. 820, 823, 88 L.Ed. 1039 (1944). The futility exception to the exhaustion requirement applies when there is nothing to be gained other than an agency decision adverse to the plaintiff. See West v. Bergland, 611 F.2d 710, 714-20 (8th Cir.1979), cert. denied, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980); B. Schwartz, Administrative Law Sec. 8.31, at 505-07 (2d ed. 1984).
 
 
 20
 Further development at the administrative level will not be necessary. The Hospital has submitted a claim for payment of the disputed costs for 1982-83, which the Intermediary then denied. The PRRB on January 13, 1986 reversed the decision of the Intermediary, and on March 12, 1986 the Deputy Administrator reversed the PRRB. The pattern is clear. Little would be gained by insisting on the administrative process playing itself out. The Secretary has been unable to controvert that the labor/delivery room policy is irrational with regard to cost reporting year 1981. There is no reason to believe that we would reach a different result for 1982-83. Therefore, we conclude that the district court did not err in requiring that the Secretary reimburse the Hospital for cost reporting years 1982-83.
 
 
 21
 For the reasons stated above, we affirm the decision of the district court.
 
 
 
 *
 The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 Otis R. Bowen, the successor to Margaret M. Heckler, has been substituted as the appellant in this case pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [2]
 The Honorable John B. Jones, United States District Judge for the Southern District of South Dakota
 
 
 [3]
 Reimbursement is calculated using the following two-step procedure:
 
 
 [1]
 total cost routine services = average cost/diem
 total number of inpatient days
 
 
 [2]
 Average cost per diem X number of Medicare
 beneficiary inpatient days = amount reimbursed.
 Saint Mary of Nazareth Hosp. Ctr. v. Schweiker, 718 F.2d 459, 462 (D.C.Cir.1983).
 
 
 [4]
 The Chairman of the PRRB stated in a concurring opinion in another case:
 [I]t is essential that the Board's non-recognition of the prior reversals [by the Deputy] be put in proper perspective. It is not the result of unawareness or intransigence. Rather, it is the result of the Board's inability to apply an interpretation which is fundamentally incorrect to a dispute brought before it.
 PRRB Hearing Dec. No. 80-D95, Medicare & Medicaid Guide (CCH) p 30,864 (Nov. 4, 1980).
 
 
 [5]
 See infra at II. A
 
 
 [6]
 There is normally no public record made when PRM provisions are adopted. Therefore, the record does not show why HHS adopted the labor/delivery room accounting methodology in the first instance. See Reply Brief at 11 n. 13. Section 2345 is thus an opinion of the agency, in the manner of an interpretive regulation, accorded less deference than substantive rules. See General Motors Corp. v. Ruskelshaus, 724 F.2d 979, 984 (D.C.Cir.1983); Granville House, 715 F.2d at 1297-98
 
 
 [7]
 These are "standby costs." The Deputy Administrator stated that "there are often significant standby costs of preparing the beds reserved for the maternity patients while in the labor/delivery area." Dep.Admin.Dec. at 6, J.A. at 8. The court in St. Mary I disposed of this argument, relying on PRM Sec. 2205.4, stating:
 Standby costs are not to be apportioned to particular patients but should be treated as part of hospital overhead and apportioned among the total inpatient population actually receiving routine inpatient care.
 718 F.2d at 470. This is particularly true in the instant case in light of the fact that the Hospital does not assign a room until after delivery.
 
 
 [8]
 The Secretary asserts that the Hospital has waived its right to challenge the validity of the affidavits. Although we need not reach this issue, in light of our conclusion that the affidavits are irrelevant to the issue before us, there can be no question that the Hospital specifically objected to the inclusion of the affidavits in the record presented to the Deputy Administrator. See Letter from Robert J. Bohm to Irving Cohen (March 12, 1984). It is also apparent from this record that the Hospital disputed the substance of the affidavits before the court below. April 28, 1985 Hearing Transcript, J.A. at 62
 
 
 [9]
 The data contained in the affidavits were developed in response to the remand by the St. Mary I court. 718 F.2d at 474. That court had remanded the case to take further evidence on whether there were other factors in the accounting process for ancillary services which could support the Secretary's labor/delivery policy
 
 
 [10]
 The Secretary argues that if the court concludes that the affidavits are inadequate, it would then be appropriate to remand the case to the PRRB so that the Secretary could present evidence in testimonial and documentary form. Reply Brief at 4, n. 3