**McKEESPORT HOSPITAL**

v.

**Margaret M. HECKLER, Secretary, of Health and Human Services, et al.**

**GREENE COUNTY MEMORIAL HOSPITAL**

v.

**Margaret M. HECKLER, Secretary, of Health and Human Services.**

**Civ. A. Nos. 82–897, 82–1609.**

United States District Court, W.D. Pennsylvania.

Aug. 21, 1986.

Seymour Schafer, Pittsburgh, Pa., Jack M. Mumford, Harrisburg, Pa., for plaintiff in Civ. A. No. 82–897.

Ira S. Lefton, Pittsburgh, Pa., for plaintiff in Civ. A. No. 82–1609.

Albert Schollaert, Asst. U.S. Atty., Pittsburgh, Pa., for defendants in Civ. A. No. 82–897.

Diane Moskal, Asst. Regional Counsel, Philadelphia, Pa., for defendant in Civ. A. No. 82–1609.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff hospitals originally brought these actions seeking relief from the Secretary's refusal to reimburse them for certain expenses under the Medicare program. In June 1985 we granted judgment in favor of the hospitals on the issue of reimbursement of expenses of labor/delivery patients, but did not enter an amount.[1] We also remanded the cases to the Provider Reimbursement Review Board for further findings. Plaintiffs now have moved for the court to alter or amend our order of remand. The intervening disposition of other suits in various circuits persuades us to grant plaintiffs' motion.

As described in our June 1985 opinion, our decision on the substance of these complex regulatory cases followed circuit and district court opinions on the identical issues. In particular, the Court of Appeals for the District of Columbia Circuit handed down an opinion in 1983 that is the leading authority on the subject, and which has been expressly adopted by other circuits. *St. Mary of Nazareth Hospital Center v. Schweiker,* 718 F.2d 459 (D.C.Cir.1983), ("St. Mary I"); see, e.g., *Mt. Zion Hospital and Medical Center v. Heckler,* 758 F.2d 1346 (9th Cir.1985); *Beth Israel Hospital v. Heckler,* 734 F.2d 90 (1st Cir.1984). After ruling on the substantive issues in *St. Mary I,* the D.C. Circuit rendered a second opinion on the question presently before this court: What is the proper scope of remand in these cases? *St. Mary I* provided for a limited remand as set forth in the D.C. Circuit's order, adopted by this court:

> We remand the case to the District Court with instructions to remand to the PRRB for the limited purpose of taking evidence on the issue of whether the use of other ancillary services by Medicare beneficiaries at the census-taking hour suffices to compensate for the dilution of Medicare reimbursement caused by including labor/delivery area patients in the calculation of average general rou-

tine costs per diem. Absent substantial evidence to support such a contention, the Secretary is directed to exclude labor/delivery room patients, who have not previously that day received routine services, from the inpatient count used to derive the average cost per diem for general routine services.

718 F.2d at 474.

When the district court applied the order as written—that only evidence of the use of ancillary services by Medicare patients at the census hour could be presented, and if none existed, there would be no further remand, 587 F.Supp. 937 (D.C.D.C.1984)—the Secretary appealed again. The D.C. Circuit affirmed the district court and fully explained the reasons for a limited remand in *St. Mary of Nazareth Hospital Center v. Heckler,* 760 F.2d 1311 (D.C.Cir.1985) ("St. Mary II").

## SCOPE OF REMAND

While the other circuits that have considered the substantive question have recognized *St. Mary I* as being authoritative, they are split on the question of scope of remand. The Court of Appeals for the Ninth Circuit, without the benefit of *St. Mary II,* followed *St. Mary I* and interpreted the remand order narrowly. *International Philanthropic Hospital Foundation v. Heckler,* 724 F.2d 1368 (9th Cir. 1984) (per curiam) and *Mount Zion Hospital and Medical Center v. Heckler,* 758 F.2d 1346 (9th Cir.1985) (per curiam). A narrow interpretation means that remand to the PRRB will be ordered only when the Secretary can provide evidence that costs for other Medicare patients in ancillary areas of the hospital offset the dilution of Medicare reimbursement caused by including labor/delivery patients in the formula for calculating average general routine costs per diem. This offset would give the Secretary a rational basis for including labor/delivery patients—who typically are not Medicare beneficiaries and who often

---

1. Full treatment of the issue and its prior history in the federal courts at that time may be found at 612 F.Supp. 279 (W.D.Pa.1985) and the cases cited within.

do not generate routine costs—in the Medicare reimbursement formula for costs associated with routine care. In these cases the Secretary admitted having no such evidence. Instead, she wished to introduce evidence that dilution of Medicare reimbursement for routine costs was offset by some other imbalance in the reimbursement scheme—specifically, that routine costs for labor/delivery patients were higher once these patients began receiving routine care. The circuit courts for the District of Columbia and the Ninth Circuit disallowed remand for evidence-taking in any broader fashion than the order as originally written in *St. Mary I* would allow.

The Court of Appeals for the Seventh Circuit occupies the position at the other end of the scale regarding scope of remand.

> It is true that the remand in *St. Mary of Nazareth* was limited to the taking of evidence on the specific question whether the number of Medicare patients found in other ancillary areas at the census hour is sufficient to offset the dilution of Medicare reimbursement created by her labor/delivery policy. It is also true that the identical remand was issued by the Court of Appeals for the Ninth Circuit in *International Philanthropic Hospital Foundation v. Heckler*, 724 F.2d 1368 (9th Cir.1984) (per curiam). The Secretary has conceded that she cannot prove the affirmative answer to that question. But we see no reason why her opportunity to prove an offset should be so restricted. The Court of Appeals for the First Circuit issued a broader remand, allowing the Secretary to show that the dilution of the hospital's Medicare reimbursement is offset by other factors in the Medicare system. *Beth Israel Hospital v. Heckler*, 734 F.2d 90, 92 (1st Cir.1984). We agree with this approach and follow it here.

*Central DuPage Hospital v. Heckler*, 761 F.2d 354, 359 (7th Cir.1985) (footnote omitted).

The Seventh Circuit panel in *Central DuPage* later took the opportunity to further explain its position in light of *St. Mary II* when the hospitals there petitioned the court for rehearing. In an unpublished order which we will make part of the record, the court acknowledged the limited scope of the D.C. Circuit's remand and confirmed its own broad remand. In distinguishing the two cases, the Seventh Circuit concluded that in *St. Mary I and II* the Secretary waived the opportunity to present evidence of higher routine costs generated by labor/delivery patients because she did not raise the point in her pleadings. Since the decision in *St. Mary I and II* depended in part on a waiver that was not present in *Central DuPage*, the Seventh Circuit chose not to follow the limited remand of the *St. Mary* cases.

The Court of Appeals for the Fifth Circuit affirmed a District Court's exclusion of labor/delivery patients from the computation of the average cost of routine services in the Medicare reimbursement formula, following *St. Mary I* and *International Philanthropic Hospital, supra.* The court acknowledged that hospital practices vary, however, and would permit the Secretary

> to produce evidence showing that the artificially low reimbursement alleged to result from including labor and delivery room patients in the census is offset by other accounting factors, including those recognized in *St. Mary of Nazareth Hospital Center* and *International Philanthropic Hospital Foundation.*

*Baylor University Medical Center v. Heckler*, 730 F.2d 391, 392 (5th Cir.1984) (per curiam).

In an unpublished opinion, a copy of which has been provided to this court, the Fifth Circuit also remanded a later case to the PRRB to permit introduction of evidence of other offsetting accounting factors. *Tarrant County Hospital District v. Heckler*, 740 F.2d 966 (5th Cir.1984) (per curiam). *See* Memorandum in Support of the Defendants' Motion for Summary Judgment.

The Court of Appeals for the Sixth Circuit did not reach the merits of the issue at hand, but at the suggestion of counsel for both parties there, remanded to the Secre-

tary for further consideration in light of *St. Mary I. University of Tennessee v. Department of HHS*, 737 F.2d 579 (6th Cir. 1984) (per curiam).

The Court of Appeals for the Fourth Circuit wrote a full opinion in the matter in *Community Hospital of Roanoke v. Department of Health and Human Services*, 770 F.2d 1257 (4th Cir.1985). The court issued its opinion after *St. Mary II* and acknowledged differences between the circuits as to the scope of remand. 770 F.2d at 1264–65. The court also followed the principle of *St. Mary I and II* but specifically enlarged the scope of remand to permit the Secretary to introduce evidence that labor/delivery patients generate greater routine costs than other patients once they receive routine care. The court noted that the Secretary had not in prior cases been given the opportunity to prove this point. Though the Fourth Circuit expanded the scope of its remand beyond that described in *St. Mary I and II*, it did limit the potential evidence on remand to the argument described above and not simply to any offsetting factor available somewhere in the Medicare reimbursement formula. The Fourth Circuit thus occupies a middle ground between the narrow scope of remand in *St. Mary I and II* and the broad scope exemplified in *Central DuPage*.

Most recently, the Court of Appeals for the Eighth Circuit joined the seven other circuits in expressly or impliedly finding irrational the Secretary's method of Medicare reimbursement originally at issue here. *Sioux Valley Hospital v. Bowen*, 792 F.2d 715 (8th Cir. June 2, 1986). The Eighth Circuit's position on the scope of remand is described below.

## DISCUSSION

Against this backdrop of varied positions from the courts of appeals and our original opinion in these cases in which we would have permitted the Secretary to set forth "other possible accounting considerations" supporting her position, we must review and determine the appropriate scope of re-

mand. We are convinced that these cases should be remanded only for the narrow evidence gathering purpose described in *St. Mary I and II.*

In the first place we find the grounds on which the Seventh Circuit permitted broad remand subject to question. The court did identify language in *St. Mary II* in which the D.C. Circuit noted the Secretary's failure in prior proceedings to raise an argument about the offsetting effects of higher routine costs generated by labor/delivery patients. *St. Mary II*, 760 F.2d at 1319. Nevertheless, it is plain that, whatever the Secretary's failure to plead, the D.C. Circuit in *St. Mary II* provided a detailed explanation of its *reasons* for limiting the scope of remand. The court did not rely to any great extent on a possible waiver as grounds for its decision.

Furthermore, in its opinion on the merits in *Central DuPage*, the Seventh Circuit specifically relied on the First Circuit's approach to expanding the scope of remand in *Beth Israel Hospital v. Heckler*, 734 F.2d 90 (1st Cir.1984). See 761 F.2d at 359. The court in *Beth Israel Hospital* adopted verbatim the remand order from *St. Mary I.* In addition, however, the First Circuit stated the following:

> The Secretary requests the same opportunity provided in *St. Mary* to show that the dilution of the hospital's Medicare reimbursement is offset by other factors in the Medicare system. One such factor the Secretary suggests is that maternity patients create greater routine costs once they are transferred to a routine care area than the average routine costs of other patients. The Secretary should be allowed to introduce additional evidence pertaining to such an offset.

*Beth Israel Hospital*, 734 F.2d at 92.

Of course, the First Circuit decided *Beth Israel Hospital* without benefit of *St. Mary II*. We now know that it is not consistent both to follow the remand order of *St. Mary I* and to permit introduction of evidence on any matter other than the offsetting effects of costs for Medicare patients in ancillary areas of the hospitals. A

misconception may have arisen in our own cases because we referred to both the St. *Mary I* remand order and to *Beth Israel Hospital* as an example of the scope of remand.

The Fourth Circuit chose a narrower alternative, permitting the Secretary to support her argument that labor/delivery patients generate higher costs once they are transferred to routine care areas, but limiting reception of evidence to this point. In other cases the Secretary has submitted affidavits from two health economists who identified the statistical likelihood that Medicare subsidizes the treatment of non-Medicare patients, and that including labor/delivery patients in defendants' reimbursement formula supports the Secretary's use of averaging: it offsets the higher routine costs incurred by labor/delivery patients. Affidavits of J. Michael Fitzmaurice and Jerry L. Cromwell. The PRRB on its own recently reviewed this evidence. The Board found the data used by Dr. Fitzmaurice in forming his conclusions were not "comparable, consistent, or reliable." *Missouri Hospital Association Labor/Delivery Room Group Appeal v. Blue Cross Hospital Service Incorporated of Missouri*, PRRB Hearing Decision No. 86–D92 (June 30, 1986), reported in [New Developments] Medicare and Medicaid Guide (CCH) ¶ 35,484, at 11,504. The Board also concluded that Dr. Cromwell's review of Dr. Fitzmaurice's work was superficial and uncorroborative. *Id.* at 11,505. Prior to this administrative determination, the Eighth Circuit found the affidavits irrelevant to the specific issue then before the court. *Sioux Valley Hospital*, 792 F.2d at 723. At argument on plaintiff's motion, counsel for the Secretary confirmed that this is the type of evidence it would submit in this case on remand if permitted. Transcript of July 24, 1985 Argument, Docket No. 29, at 6, 12–13.

This court also finds that neither the affidavits nor the existence of any other evidence on this point justifies broad remand. The Secretary's regulations describe the average per diem method of cost reimbursement, which

> does not take into account, variations in the amount of service which a day of care may represent and thereby assumes that the patients for whom payment is made on this basis are average in their use of service.

42 C.F.R. § 405.403(d) (1980).

In fact, the reimbursement formula at issue itself follows this averaging method; that is, the formula assumes that the costs of routine services are the same per inpatient day.[2] Now the Secretary argues that including labor/delivery patients in the reimbursement formula is justified because such patients generate higher routine costs once they receive routine care. She thus wishes to forego her own assumption that per diem costs for routine care of all patients is equal in seeking an offsetting factor somewhere in the reimbursement scheme to rationalize her decision to include labor/delivery patients in the inpatient count for assessing routine costs. We, like the other courts, consider this an impermissible post hoc rationalization. See, e.g., *St. Mary II*, 760 F.2d at 1319; *Sioux Valley Hospital*, 792 F.2d at 723. If labor/delivery patients in fact incur greater routine costs, the Secretary could have designated the treatment as "special care." 42 C.F.R. § 405.452(d)(10) (1980). Such designation permits an exception from the averaging principle. *Butler County Memorial Hospital v. Heckler*, 780 F.2d 352 (3d Cir.1980). She has not done so. In addition, the Secretary also was given the opportunity to show that the use of other ancillary services by Medicare beneficiaries offsets inclusion of labor/delivery patients—usually not Medicare patients and usually not recepients of routine care—in the calculation of average per diem routine costs. She has been unable to make such a showing in any of the cases we reviewed. Her counsel has advised us on the record

**2.** $\text{Medicare Reimbursement} = \dfrac{\text{Total Cost of Routine Services}}{\text{Total Number of Inpatient Days}} \times \text{Medicare Inpatient Days}$

that she has no such evidence in this case, and she has made no effort to present any since our original remand order was entered. Transcript of July 24, 1985 Argument, Docket No. 29 at 4.

The remand order entered by the D.C. Circuit is the most logical and persuasive. It should be applied in this case in the narrow sense described in *St. Mary I and II* and in the foregoing opinion. In these or the other cases applying this standard, the Secretary has had no evidence to present. The result of establishing this scope of remand thus is to eliminate the need for remand as we originally envisioned it. We will enter an order consistent with this posture, granting judgment in plaintiffs' favor for the amounts in question.

### ORDER

Pursuant to Federal Rule of Civil Procedure 59(e) and the accompanying opinion, the portion of our June 26, 1985 order providing for remand to the PRRB is vacated and judgment is entered as follows:

In Civil Action No. 82–897 judgment is hereby entered in favor of plaintiff and against defendants in the amount of $26,000.00.

In Civil Action No. 82–1609 judgment is hereby entered in favor of plaintiff and against defendant in the amount of $12,670.00.

The balance of our prior order remains in force.