**UNIVERSITY OF MICHIGAN HOSPI-TAL; Borgess Medical Center; Clinton Memorial Hospital; Cottage Hospital of Grosse Pointe; Detroit Macomb Hospital Corp., Detroit Memorial Hospital; Detroit Macomb Hospital Corp., South Macomb Hospital; Edward W. Sparrow Hospital; Flint Osteopathic Hospital; Holland Community Hospital; Lansing General Hospital Osteopathic; Lapeer County General Hospital; McClaren General Hospital; Metropolitan Hospital; Midland Hospital Association; Munson Medical Center; Muskegon General Hospital; Oakwood Hospital; Providence Hospital; Reed City Hospital; St. Francis Hospital; St. Joseph Hospital; Sinai Hospital of Detroit; W.A. Foote Memorial Hospital; and William Beaumont Hospital, Plaintiffs-Appellees,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services; Provider and Reimbursement Review Board, Defendants-Appellants.**

No. 85–1816.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1986.

Decided Feb. 26, 1987.

Karl Overman, Asst. Atty. Gen., Detroit, Mich., Deborah M. Chaskes, Dept. of H.H.S., Washington, D.C., Mary Ursula Salhus (argued), for defendants-appellants.

Kenneth R. Marcus, William G. Christopher (argued), Detroit, Mich., Chris E. Rossman, for plaintiffs-appellees.

Before KEITH and GUY, Circuit Judges, and EDGAR *, District Judge.

KEITH, Circuit Judge.

Appellant, Secretary of Health and Human Services ("Secretary"), appeals the decision of the United States District Court, Eastern District of Michigan, requiring the Secretary to reimburse appellees, a group of Michigan hospitals ("hospitals"), for costs associated with the Medicare reimbursement program. The hospitals, providers of Medicare services, brought this action challenging a decision of the Secretary that labor/delivery room days are to be included in the determination of a provider's average per diem cost of routine in-patient care. For the reasons set forth below, we find merit in the hospitals' challenge to the reimbursement procedures and affirm the district court's denial of the Secretary's motion to remand this case to the Provider Reimbursement Review Board ("PRRB") for presentation of additional evidence. We reverse, however, the district court's remand of the "Exhibit B–1" hospitals' claims to the PRRB, thereby holding that the PRRB's jurisdiction is limited by 42 U.S.C. § 1395oo (a) to items claimed or otherwise disclosed on the initial cost report or to amended items which revise cost report information previously submitted. *See Saline Community Hospital v. Secretary of Health and Human Services,* 744 F.2d 517 (6th Cir.1984) (per curiam); *see*

*also Baptist Hospital East v. Secretary of HHS,* 802 F.2d 860 (6th Cir.1986); *Bethesda Hospital, et al. v. HHS,* 810 F.2d 558 (6th Cir.1987).

## I. *The Labor/Delivery Policy*

The Medicare Program subsidizes the reasonable costs of medical care for elderly and disabled citizens. 42 U.S.C. § 1395 (1982). Part A of the program provides for federal reimbursements to hospitals and other institutions for services rendered to Medicare beneficiaries. 42 U.S.C. §§ 1395c–1395i–2 (1982). Part B is primarily for reimbursement of physician services. 42 U.S.C. §§ 1395j–1395w (1982). This action involves only Part A.

During the cost reporting periods at issue, the Medicare statute fixed the amount of reimbursement for Part A providers based on the providers actual "reasonable cost" of furnishing care to Medicare beneficiaries. The statute broadly defines reasonable costs, 42 U.S.C. § 1395x(v)(1)(A),[1] and leaves to the regulations "the method or methods to be used, and the items to be included, in determining such costs." *Id.* The Secretary has issued Provider Reimbursement Manual HIM–15 ("Manual") as additional guidance in interpreting the Medicare reimbursement regulations.[2]

The apportionment of allowable routine service costs between Medicare and non-Medicare patients is at issue. Under the apportionment process, hospital costs are divided into three groups with separate reimbursement calculations for each: one for routine services in general care areas; one for routine services in special care areas; and one for ancillary services.[3] Routine services are defined as "the regular room, dietary and nursing services, minor medical and surgical supplies, and the use of equip-

---

* Honorable R. Allan Edgar, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. This section also states that "under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs."

2. The labor/delivery policy challenged by the hospitals is contained in Section 2345 of the Manual.

3. Ancillary care includes services such as surgery or x-rays, for which a separate fee is charged. 42 C.F.R. § 405.452(b).

ment for which a separate charge is not customarily made." 42 C.F.R. § 405.-452(b)(2). Under the regulations, reimbursement is calculated separately for routine services and for ancillary services.

This case involves the reimbursement for routine services in general care areas. The costs of general routine services are apportioned between Medicare and non-Medicare patients on the following basis:

(1) $\frac{\text{Total Cost of Routine Services}}{\text{Total Number of In-patient Days}}$ = Average Cost Per Diem

(2) (Average Cost Per Diem) $\times$ (Number of Days of Care Rendered to Medicare Beneficiaries) = Amount Reimbursed by Medicare

42 C.F.R. § 405.452(c).

Section 2345 of the Manual affects the amount that the hospitals receive from Medicare for routine services. This labor/delivery policy requires that "[i]f a patient is in the labor/delivery room at the census-taking hour, an in-patient day will be counted in the routine maternity care area." Under § 2345 of the Manual, labor/delivery *days* must be included in total number of in-patient days. However, labor/delivery costs are not included in the routine cost equation. This is because labor/delivery services are considered ancillary, and reimbursement for ancillary services is separate from that for routine services. The hospitals claim that because labor/delivery patients almost by definition are non-Medicare patients, the average cost per diem is reduced, and consequently the amount reimbursed by Medicare is reduced. Thus, they claim that the per diem reimbursement figure is distorted downward.[4]

II. *The Administrative Appeals Process*

The Medicare Act establishes an appeals procedure which provides for administrative review of final determinations of reimbursement to providers for services rendered to Medicare beneficiaries. 42 U.S.C. § 1395oo (1982). A provider must file a cost report with its fiscal intermediary within three months after the end of its cost reporting period. 42 C.F.R. § 405.-453(f). The fiscal intermediary audits the

report and reports the results to the provider in a Notice of Program Reimbursement ("NPR"). *Id.* An appeal from a final decision of the fiscal intermediary concerning "matters covered by such cost report" is brought before the PRRB; this is the step in the proceedings where an evidentiary hearing occurs. 42 U.S.C. § 1395oo(d) (1982). A decision of the PRRB is reviewable by the Deputy Administrator of the Health Care Financing Administration ("Deputy Administrator"). 42 C.F.R. § 405.1875.

The Deputy Administrator may affirm, reverse or modify the PRRB decision, or may remand the case to the PRRB. 42 C.F.R. § 405.1875(g). If the Deputy Administrator remands to the PRRB, he may direct that the PRRB "take further action with respect to the development of additional facts or new issues." 42 C.F.R. § 405.1875(h). It is improper for the Deputy Administrator to remand for, among other reasons, "[p]resentation of evidence existing at the time of the [PRRB] hearing that was known or reasonably could have been known." *Id.*

III. *Lower Court Proceedings*

In their cost reports for the fiscal years at issue, one group of hospitals excluded patients who were in the labor/delivery rooms at the daily census-taking hour from their computation of general routine per

---

**4.** The hospitals claim that the distortion occurs because labor/delivery services are excluded from the numerator but not the denominator of the fraction. They contend that the fraction is smaller and therefore the fraction multiplied by the number of Medicare patients yields a smaller total than it otherwise would.

diem costs ("Exhibit A hospitals"). Their fiscal intermediary made audit adjustments and included the days in the calculation to comport with § 2345 of the Manual.

A second group of hospitals did not exclude the labor/delivery room days from their cost report ("Exhibit B hospitals"). Some Exhibit B hospitals then submitted amended reports excluding the labor/delivery room days to the fiscal intermediary before the intermediary had issued the NPR's (the "Exhibit B–1 hospitals"). The intermediary refused to allow the amendments. Other Exhibit B hospitals received their NPR's, then attempted to alter their cost reports ("Exhibit B–2 hospitals"). The intermediary also refused to allow these hospitals to amend their cost reports.

The hospitals as a group requested a hearing before the PRRB by decision dated January 10, 1984. The PRRB reversed the intermediaries' rulings and concluded that the patients in the labor/delivery room area should not be included in the count of patients used to compute the average per diem cost of routine care. The PRRB also concluded that it did not have jurisdiction over the hospitals that had not excluded labor/delivery room days from the reimbursement computation in their initial cost reports (Exhibit B hospitals). The Deputy Administrator reversed the PRRB on the substantive issue on March 7, 1984, ruling that labor/delivery room patients must be included in the routine in-patient count.

The hospitals appealed the decision to the United States District Court for the Eastern District of Michigan. The court granted summary judgment in favor of the Exhibit A hospitals, finding that "labor/delivery room days should not be included in the determination of the Exhibit A hospitals' average per diem cost of routine in-patient care." The court granted summary judgment in favor of the Secretary as to the Exhibit B–2 hospitals, finding that the PRRB correctly refused to exercise jurisdiction over their claims; however, the court remanded the claims of the Exhibit B–1 hospitals to the PRRB to determine whether the cost reports at issue contained a material error.

## IV. *Discussion*

 This appeal presents two questions. The first issue concerns the validity of § 2345 of the Manual and the district court's denial of the Secretary's motion to remand the case to the PRRB for presentation of additional evidence. The Secretary argues that the inclusion of labor/delivery patients in the count of routine days does not dilute Medicare reimbursement because the costs of caring for labor/delivery patients once they enter routine care areas is on the average higher than the routine costs of caring for non-maternity patients. Thus, it is argued that the hospitals are not financially disadvantaged by the labor/delivery policy. The Secretary submits that this case should be remanded to the PRRB to permit the Secretary an opportunity to present evidence that the inclusion of the labor/delivery patients in the in-patient census is offset by higher routine costs per diem of maternity and pediatric patients. We do not agree with the Secretary's position.

In *St. Mary of Nazareth Hospital Center v. Schweiker,* 718 F.2d 459 (D.C.Cir. 1983) (St. Mary I), the court considered the validity of the labor/delivery policy. The court held that the apportionment scheme was a concrete violation of 42 U.S.C. § 1395x(v)(1)(A). It concluded that "it [was] irrational to apportion to labor/maternity patients costs which they [had] not incurred without either including the costs that they [had] incurred or demonstrating that the distortion [was] balanced by some other aspect of the accounting process." *St. Mary I,* 718 F.2d at 473. While the court found this distortion to be illegal, it remanded the case to the district court with instructions to remand to the PRRB "for the limited purpose of the PRRB's taking evidence on the question whether the number of Medicare patients found nationally in other ancillary areas at the census hour [was] sufficient to offset the dilution of Medicare reimbursement created by counting labor/maternity patients in the routine in-patient count." *Id.* at 474.

On remand, the district court entered judgment for the hospitals. *St. Mary of Nazareth Hospital Center v. Heckler,* 587 F.Supp. 937 (D.D.C.1984). The district court referred to the court of appeals limiting instructions as follows:

> If there is no such offset or if the Secretary decides not to contest the issue, then the Secretary may not count labor/delivery patients, who have not previously that day received routine care, among the routine in-patient population for purposes of calculating the average cost per diem for routine services.

*Id.* at 939.

The district court then concluded that the Secretary could not show that such offset existed, *id.* at 938, and held that no remand from it to the PRRB was necessary. *Id.* at 939. The district court's decision was affirmed on appeal. *St. Mary of Nazareth Hospital Center v. Heckler,* 760 F.2d 1311 (D.C.Cir.1985) (St. Mary II).

This court follows the reasoning of *St. Mary I.* We thus find merit in the hospitals' challenge to the reimbursement procedures and hold that the labor/delivery policy is irrational. In so holding, we note that we are following the unanimous weight of authority in those circuits which have reviewed the labor/delivery policy. The Ninth Circuit in *International Philanthropic Hospital Foundation v. Heckler,* 724 F.2d 1368, 1369 (9th Cir.1984), followed *St. Mary I* stating:

> Because the labor and delivery room issue has been fully answered in a careful and scholarly opinion by Judge McGowan [of the D.C.Circuit], and because the parties have not convinced us that we can improve upon that decision, we follow the lead of ... *St. Mary.*

*See also Baylor University Medical Center v. Heckler,* 730 F.2d 391, 392 (5th Cir. 1984); *Beth Israel Hospital v. Heckler,* 734 F.2d 90, 92 (1st Cir.1984); *Central DuPage Hospital v. Heckler,* 761 F.2d 354, 357 (7th Cir.1985); *Community Hospital of Roanoke Valley v. Health and Human Services,* 770 F.2d 1257, 1263 (4th Cir.1985).

■ We further find that the district court was correct in denying the Secre-

tary's motion to remand the case to the PRRB for presentation of additional evidence. The Secretary argues that the court in *St. Mary I* remanded the action to the PRRB because it recognized that an additional administrative hearing would be necessary for the production of evidence. It is further argued that in doing so, the court acknowledged that it had shifted the burden of going forward to the Secretary and therefore gave him an opportunity to prove that averaging works. Thus, the Secretary contends that a remand to the PRRB should be permitted to allow him to show that the inclusion of labor/delivery patients in the count of routine days does not distort the reimbursement because the policy compensates for higher routine costs generated by labor/delivery patients once they do receive routine care. We do not agree with the Secretary.

In *St. Mary II,* the court admitted that broad language in *St. Mary I* arguably supported the government's case for a wide-ranging evidentiary inquiry on remand. *St. Mary II,* 760 F.2d at 1317. However, the court in *St. Mary II* noted that its "holding in *St. Mary I,* ... was based on the inability of HHS to come up with an affirmative justification for its policy on labor/delivery patients *rather than an overall evaluation of routine-care costs."* *Id.* at 1318. (emphasis added). The court further noted that from its inception, the case had "never presented the court with an opportunity to review the panoramic equity of the Medicare reimbursement scheme." *Id.* In addressing the Secretary's argument that there was no distortion due to the overall balance of routine cost reimbursement, the court pointed out that the Secretary's regulations assumed that the average routine costs per day are the same for each patient. *Id.* at 1319; *see* 42 C.F.R. § 405.403(d) (1986) (average per diem cost method assumes that patients for whom payment is made are average in their use of service). The court then stated that a mechanism was available to the Secretary to account for higher routine costs: the designation of an area as special care. The Secretary failed to em-

ploy this mechanism. Thus, the court rejected the argument. *Id.*

In this case we note that the Secretary is advocating the same argument before us that the court in *St. Mary II* entertained and rejected. We are in accord with the reasoning and holding of *St. Mary II* on this issue. We thus affirm the district court's denial of the Secretary's motion to remand this case to the PRRB.

Furthermore, we find that in the present case the Secretary expressly waived his opportunity to present additional evidence during the administrative proceeding. Pursuant to 42 C.F.R. § 405.1875(h)(2), the following bases, among others, are *not* acceptable for remand by the Deputy Administrator to the PRRB:

(i) Presentation of evidence existing at the time of the [PRRB] hearing that was known or reasonably could have been known;

(ii) Introduction of a favorable court case that was either not available in print at the time of the [PRRB] hearing or was decided after the [PRRB] hearing.

In the present case, the evidence that the Secretary proposes to submit is based on 1981 hospital data, and was therefore available to him at the time of the PRRB hearing. Also, the district court aptly noted that the administrative hearing in this case occurred after the *St. Mary I* decision was released. Thus, the Secretary "was on notice, at the time of the PRRB hearing, of the need to present additional evidence to bolster her position." The Secretary's failure to present this evidence at the hearing precludes him from attempting to present it now.

■ The second issue on appeal concerns the district court's remand of the claims of the Exhibit B–1 hospitals to the PRRB. The Exhibit B–1 hospitals failed to exclude the labor/delivery room days on their original cost reports, but amended the reports before issuance of the NPR's. The district court ruled that the Exhibit B–1 hospitals could amend their costs reports before the issuance of their NPR's to correct "material errors" pursuant to 42 C.F.R. § 405.-453(f) and § 2631.2A of the Manual. The

district court remanded the Exhibit B–1 hospitals' claims to the PRRB and concluded that "PRRB jurisdiction over the substantive claims of the Exhibit B–1 hospitals thus turns on whether or not their initial cost reports contain a material error."

The Secretary argues that the PRRB lacks jurisdiction over the claims since the Exhibit B–1 hospitals did not raise them on or with their cost reports. We agree and hold that the PRRB lacks jurisdiction over claims which are not initially included in the cost report or which are not properly tendered as amendments which revise cost report information previously submitted. *See Saline Community Hospital v. Secretary of Health and Human Services,* 744 F.2d 517 (6th Cir.1984) (per curiam) (citing *Borgess Medical Center v. Schweiker,* 563 F.Supp. 370 (W.D.Mich.1982)); *see also Baptist Hospital East v. Secretary of HHS,* 802 F.2d 860 (6th Cir.1986); *Bethesda Hospital, et al. v. HHS,* 810 F.2d 558 (6th Cir.1987).

The Medicare statute mandates that the provider file with its fiscal intermediary a required cost report. 42 U.S.C. § 1395*oo*(a) (1982). If the provider "is dissatisfied with a final determination of . . . its fiscal intermediary as to the amount of total program reimbursement," the provider is entitled to a hearing before the PRRB "with respect to such cost report." *Id.* The PRRB only has the power to review "matters covered by such cost reports." 42 U.S.C. § 1395*oo* (d) (1982). Pursuant to 42 C.F.R. § 405.-453(f), the Secretary provides that "[a]mended cost reports to *revise* cost report information which has been *previously* submitted may be permitted or required as determined by the Health Care Financing Administration." (Emphasis added).

This Court has recently recognized the jurisdictional limitations of the PRRB in *Saline Community Hospital.* In *Saline,* a group of Michigan hospitals were denied Medicare reimbursement for their return on net-invested equity capital for their 1979 cost reporting year because they did not include a claim for those items in their 1979 cost report. Each hospital subsequently attempted to amend its cost report to in-

clude such claims. The hospitals appealed to the PRRB the fiscal intermediary's refusal to permit the filing of an amended cost report. The PRRB dismissed the appeals, noting that the hospitals had failed to make the claims in their original cost reports. The hospitals appeals to the district court. The district court permitted the hospitals to raise the claim of return-on-equity.

On appeal, this Court reversed, stating the following:

[42 U.S.C. § 1395oo] requires that a provider include disputed issues within the initial cost report and preserves the right of review to the PRRB if the intermediary ignores the claim or instructs the provider to delete the claim. The provider is not entitled to compel the Board to review *new* claims.

*Saline Community Hospital,* 744 F.2d at 519. We further noted that the tendered amendments did not "revise" any "previously submitted" material, but added new material to the cost report. *Id.;* 42 C.F.R. § 405.453(f). Thus, the PRRB had no jurisdiction to entertain the claim.

In the present case, the Exhibit B-1 hospitals included their labor/delivery days in their computations of reimbursement for routine services on their original cost reports. Their initial cost reports therefore did not contain any "material errors" in the sense of arithmetical mistakes or omissions. Rather, their attempted amendments were for the purpose of giving the fiscal intermediaries notice of their disagreement with and challenge to the Secretary's labor/delivery room policy. Therefore, their subsequent amendments did not correct any "material errors" nor revise any previously submitted matter, but were attempts to raise new claims. Thus, in adherence to our decision in *Saline,* we hold that the PRRB has no jurisdiction over the claims of the Exhibit B-1 hospitals. *See also Baptist Hospital East v. Secretary of HHS,* 802 F.2d 860 (6th Cir.1986); *Bethesda Hospital, et al. v. HHS,* 810 F.2d 558 (6th Cir.1987).

Accordingly, for the reasons set forth herein, the district court's denial of the Secretary's motion to remand this case to the PRRB for presentation of additional evidence is AFFIRMED; the district court's remand of the Exhibit B-1 hospitals' claims to the PRRB is REVERSED.